## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

AMY CHILDERS, BARRY EARLS,
THOMAS FETSCH, CODY ITALIA,
DAVID KIEL, NAZAR MANSOOR,
DEBBIE RIDER, TRENT SHORES, STEVE
SCHUSSLER, CASSIE LIETAERT, RYAN
INGALLS,  CHRIS JESSE, and KAREN
FLECKENSTEIN, individually and on behalf
of a class of similarly situated individuals,

*Plaintiffs*,

v.

MENARD, INC., a Delaware corporation, and
JOHN DOES 1-10,

*Defendants*.

No. _20-CV-107_____

### JURY TRIAL DEMANDED

### CLASS ACTION COMPLAINT

Plaintiffs AMY CHILDERS, BARRY EARLS, THOMAS FETSCH, CODY ITALIA,

DAVID KIEL, NAZAR MANSOOR, DEBBIE RIDER, TRENT SHORES, STEVE SCHUSSLER,

CASSIE LIETAERT, RYAN INGALLS, CHRIS JESSE, and KAREN FLECKENSTEIN (each

individually a "Plaintiff" and collectively "Plaintiffs") on their own behalf and on behalf of a class

comprised of individuals similarly situated bring this Class Action Complaint and Demand for Jury

Trial against MENARD, INC. ("Menards" or "Defendant") and JOHN DOES 1-10 for violating the

terms and conditions of its offered rebates.  Plaintiffs and the Class Members purchased Menards'

items to which the rebate applied, timely submitted paperwork for the advertised rebate, but never

received the advertised rebate at all or in the appropriate amount. Plaintiffs bring this case to enjoin Menards' ongoing misleading, unfair and deceptive conduct and its systematic and ongoing breach of rebate contracts with its customers.  By this class action lawsuit, Plaintiffs seek damages, restitution, injunctive relief and attorneys' fees against Menards for the conduct detailed herein.  Plaintiffs allege the following based upon their own personal knowledge, acts and experiences or upon information and belief, including due investigation conducted by their attorneys.

## <u>NATURE OF THE ACTION</u>

1.      The home improvement, "do it yourself" retail sector is big and has grown significantly in recent years. Between June 2018 and June 2019, American consumers spent nearly $322 billion on remodeling and home improvement, a 6.8% increase from the prior year.[1]

2.      Menards is the largest privately-held home improvement company in the country, with over 300 locations and revenue of approximately $10 billion annually. It is the third largest home improvement store in the country, behind only Home Depot and Lowe's.

3.      Positioning itself as a lower cost alternative to Home Depot and Lowe's is a critical part of Menards' marketing strategy. Through its ubiquitous sales, promotions and advertising, its customers and the public generally are implored to "save big money at Menards."

4.      One of the most vital strategies Menards employs is its rebate programs. These rebate programs, particularly its much-hyped store-wide "11% Off Everything" rebate promotion, are a prominent component of Menards' advertising and marketing efforts, both inside and outside of its stores.

5.      Menards' 11% Rebate promotion, which is a mail-in program, allows Menards to sell items at full price to customers, despite the promise of the 11% discount through the rebate.

---

[1]   *See*   https://www.housingwire.com/articles/49589-renovation-spending-will-slow-in-2020-after-record-setting-year-harvard-report-says/ (last visited January 22, 2020).

However, rather than discount the cost of a given item by placing that item on sale (and thereby guarantee that it would not receive revenue from the discounted portion), Menards created a rebate mail-in program designed to reduce the issuance and redemption of rebates.

6.      Menards benefits from the increased sales that accompany substantial rebate offers (because consumers think they are getting a deal), as well as the profit margins accruing from the sale of full-price goods (because consumers rarely receive the appropriate rebate amount).

7.      A consumer would reasonably expect to receive 11% off its entire purchase based upon Menards' representations. But, Menards systematically and intentionally fails to pay the 11% rebate to consumers who have followed the rebate process, upheld the terms of the agreement Menards itself has established, purchased items eligible for the 11% rebate, and timely submitted the necessary paperwork to redeem that rebate. Many Plaintiffs received only a portion of the stated rebate without any explanation as to why their rebate was reduced. Worse, many Plaintiffs never received their rebates at all.

8.      In both instances, Menards breached its contract with Plaintiffs and the Class. Menards makes a business practice of this breach; systematically and repeatedly violating its rebate agreements with its customers by failing to pay owed rebates at all or only paying them in part.

9.      Menards' rebate process systematically denies its customers the full value of the rebates that they earned by following the terms of Menards' rebate program, purchasing items during the rebate promotional period, and timely submitting the required rebate paperwork.

10.      In reality, and as detailed below, customers do not actually "save big money" at Menards. A substantial number of customers never receive the savings and benefits promised by Menards' rebate campaigns.

11.     Plaintiffs bring this action to put an end to Menards' unfair, deceptive and illegal practices, including its ongoing misrepresentations and breaches of its rebate program, and to compel Menards to compensate its customers for the promised rebates to which they are entitled.

## PARTIES

12.     Plaintiff Debbie Rider is a natural person and, at all relevant times, a resident of the State of Illinois.

13.     Plaintiff Steve Schussler is a natural person and, at all relevant times, a resident of the State of Illinois.

14.     Plaintiff Trent Shores is a natural person and, at all relevant times, a resident of the State of Illinois.

15.     Plaintiff Barry Earls is a natural person and, at all relevant times, a resident of the State of Michigan.

16.     Plaintiff Ryan Ingalls is a natural person and, at all relevant times, a resident of the State of Michigan.

17.     Plaintiff David Kiel is a natural person and, at all relevant times, a resident of the State of Michigan.

18.     Plaintiff Cassie Lietaert is a natural person and, at all relevant times, a resident of the State of Michigan.

19.     Plaintiff Nazar Mansoor is a natural person and, at all relevant times, a resident of the State of Michigan.

20.     Plaintiff Cody Italia is a natural person and, at all relevant times, a resident of the State of Missouri.

21.     Plaintiff Thomas Fetsch is a natural person and, at all relevant times, a resident of the State of North Dakota.

22.     Plaintiff Karen Fleckenstein is a natural person and, at all relevant times, a resident of the State of Ohio.

23.     Plaintiff Amy Childers is a natural person and, at all relevant times, a resident of the State of Wisconsin.

24.     Plaintiff Chris Jesse is a natural person and, at all relevant times, a resident of the State of Wisconsin.

25.     Defendant Menard Inc. is a Delaware corporation with its principal place of business located in Eau Claire, Wisconsin.  Menards owns and operates over 300 stores in 14 states across the Midwestern portion of the country and is the third-largest chain of home improvement stores in the United States.

26.     Upon information and belief, Menards also controls Rebates International® and RebateInternational.com® ("Rebates International"), a rebate clearinghouse which operates the Menards rebate program. Menards registered trademarks on October 11, 2005 and renewed the service marks in 2015.[2]

## JURISDICTION AND VENUE

27.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), because the amount in controversy exceeds the value of $5,000,000, exclusive of interests and costs, because the Class consists of 100 or more putative Class Members, and because a number of named Plaintiffs and Class Members are diverse from Menards, a Delaware corporation with its principal place of business in Wisconsin.

---

[2]       *See* http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4806:i81n93.2.2 (last accessed January 22, 2020); *see also* http://tmsearch.uspto.gov/bin/showfield?f=doc&state=4804:1etkna.2.1 (last accessed January 22, 2020).

28.     This Court has personal jurisdiction over Menards because it is a corporation with a principal place of business in Wisconsin, authorized to do business in Wisconsin, transacts business in Wisconsin, and maintains sufficient minimum contacts in Wisconsin.

29.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, Menards regularly conducts business and has its principal place of business in this District, and some of the named Plaintiffs reside in and suffered harm in this District as a result of Menards' acts set forth more fully below.

## COMMON FACTUAL ALLEGATIONS

### *Menards Uses a Mail-in Rebate Program to Market to Customers in a Competitive Home-Improvement Marketplace.*

30.     The amount of money American consumers spent on home improvement has skyrocketed over the past several years.

31.     In order to gain a competitive advantage in this growing home improvement marketplace, Menards has attempted to position itself as the low-cost or value option for shoppers. To that end, Menards uses its rebate offers to market to customers with the promise that they will "save big money at Menards."

32.     Menards' marketing prominently promotes its rebate programs, which offer consumers product-specific rebates and the occasional (and much-advertised) 11% rebate off everything in the store.

33.     A mail-in rebate program allows Menards to advertise huge price savings to consumers, *all the while designing the program to ensure that some portion of those rebates will never be issued or redeemed.*

34.     Menards' rebate program truly is the best of all worlds for Menards.  It sells items at full (or an inflated) price knowing that—as a result of its deceptive, unfair and illegal practices—a substantial number of consumers will never receive their bargained-for rebates.

**_Menards Deceives Customers through its Mail-In Rebate Program._**

35.     Menards employs unfair and deceptive practices in its mail-in rebate program to reduce the issuance and redemption of rebates.

36.     Specifically, Menards' rebate process is designed to deny rebates that its customers earned by the terms of its rebate program after purchasing items during the rebate promotions and timely submitting the required paperwork.

37.     Menards offers a variety of mail-in rebate offers, all of which operate in essentially the same manner.

38.     Menards' mail-in rebate program works as follows:

39.     First, a customer purchases a product subject to a mail-in rebate.

40.     Second, the customer goes from the checkout aisle to a separate service desk in each retail location. The service desk displays a selection of dozens of rebate forms applicable to different products. At the service desk, the customer must identify the forms that correspond to the particular rebate(s) the customer seeks to submit.[3]

---

[3]     For online customer purchases of products eligible for rebates, customers can elect to have their rebate receipt supplied as an attachment to their order confirmation. To redeem the rebate, customers can complete the rebate form from Menards' online Rebate Center and mail it with their rebate receipt. _See_ Rebates, _available at_ https://www.menards.com/main/rebates/c-12553.htm (last accessed January 20, 2020).

41.     After purchase, the Menards cashier provides the customer with their purchase receipt, and with what Menards calls a "rebate receipt." The customer then takes the rebate receipt to the rebate desk to obtain a redemption ticket corresponding to the rebate receipt, as shown below:



42.     From there, a customer must complete the redemption ticket and mail it, along with the corresponding *original* rebate receipt, to Rebates International at a P.O. Box in Elk Mound, Wisconsin. Customers can package multiple rebate receipts and redemption tickets in a single envelope, if they so desire.

43.     Menards provides its customers very little information regarding its mail-in rebate program. Neither Menards nor Rebates International provide phone numbers for customers to inquire about the status of their submitted rebates.

44.     Menards provides a few terms and conditions on mail-in rebates. After customers make a purchase subject to a rebate, they are informed that they must (i) include the original rebate receipt, (ii) send it to a specified P.O. Box ("Save 11%, PO Box: 155, Elk Mound, WI 54739-0155"), (iii) no later than a certain deadline (typically around 21 days from the close of the rebate), and (iv) allow 6-8 weeks for processing.

45.     If Menards issues a rebate, it comes in the form of a check that can only be used for additional purchases at Menards.[4]

46.     As detailed in the hundreds of online consumer complaints about Menards' rebate program, customers have little to no visibility into their rebates after they comply with the steps outlined above.

47.     Menards' rebate form asks consumers to "Allow 6-8 weeks for processing" but Menards typically takes far longer than that to issue rebates, as set forth more fully in Plaintiffs' allegations below.

48.     The only way consumers can contact Rebates International is through an online form e-mail submission or a P.O. Box number in Elk Mound, Wisconsin.

49.     Menards also tells customers they can theoretically track the status of their rebates online through Rebates International's rebate tracker.[5]  Menard's rebate tracker allows customers to track the mail-in rebates they have submitted by entering into the Rebates International website either: 1) the tracking number the customer received when they filled out their rebate paperwork; or 2) their first initial, last name, house number and zip code.

---

[4]      Plaintiffs here are not challenging the fact that Menards' "rebates" are actually in-store credit usable only for additional purchases.  There is a pending class action lawsuit, *Rikkers v. Menard, Inc.*, No. 17-CV-1208 (E.D. Wis. filed Sept. 6, 2017), by which a different class of individuals is challenging Menards' practice of sending consumers rebates in the form of in-store credit checks instead of cash.

[5]      *See* https://www.rebateinternational.com/RebateInternational/tracking.do (last visited January 22, 2020).

50.     However, and as detailed below, for many Menards' rebate customers, Menards fails to acknowledge the receipt of their rebate form submissions on Rebates International's online rebate tracker, making it impossible for customers to determine what happened to the missing rebates. That is, after timely submitting the required rebate paperwork, customers enter the required information into the rebate tracker, but Menards states that it has no information about the customers' submitted rebates.

51.     For many Menards' rebate customers, this lack of transparency leads to frustration as they attempt to find out why their rebates are denied or arbitrarily devalued. Some portion of those rebate customers become so frustrated with the clandestine process that they give up trying to obtain their contractually-obligated rebates, further enriching Menards. Menard's many mail-in rebate offers include Menards' famous 11% Off Everything rebates (which can apply either store-wide or to particular items), as well as product-specific rebates for other amounts. The store-wide rebate advertisements[6] are unambiguous:



---

[6]     *See e.g.,* https://milled.com/menards/11-off-everything-Yl9JCL4uQYcGTQ7P (last visited January 22, 2020).



52.　　In fine print at the bottom of the page, the terms and conditions appear as follows:

"Mail-In Rebate. Rebate is in the form of a merchandise credit check, valid in-store only. Merchandise credit check is not valid towards purchases made on MENARDS.COM®. Limited to stock on hand. No sorry slips. First come, first served. Future sale price adjustments, exchanges and merchandise returns will void the 11% rebate on the items adjusted, exchanged and/or returned. Rebate is valid on special ordered products but does not extend to the special ordering of any normally stocked items. Not good with any other coupons or offers, except Menards® coupons, Menards rebates and manufacturer coupons. Multiple receipts may accompany one rebate certificate. Menards reserves the right to limit purchases of any and all items to reasonable job lot quantities. Excludes event tickets, gift cards, propane purchases, delivery and handling charges, all rental items, minuteKEY®, processing fees, packaging charges and extended service agreements."[7]

---

[7]　　*See* https://milled.com/menards/11-off-everything-Yl9JCL4uQYcGTQ7P (last visited January 22, 2020).

53.     As shown below, Menards also provides product-specific rebates which are separate from the "11% Off Everything" program. These product-specific rebates similarly make promises regarding the amount of the rebates, the form they will take, the steps necessary for redemption and, crucially, the restrictions Menards places on the rebate—the number of items that can be submitted for rebate and that the rebate is in the form of merchandise credit[8]:



54.     The terms and conditions on these flyers, as shown above, are the only terms and conditions available to consumers at the time of purchase.

**Consumers Have Long Complained About the Deceptiveness of Menards' Mail-in Rebate Program, but the Program Remains the Same.**

---

[8]     *See* http://www.valuetactics.com/wp-content/uploads/2015/10/menards-tempt1a.jpg (last visited January 22, 2020).

55.     Menards' customers have long been complaining about the unfair and deceptive rebate program for years, accusing Menards of being "con artists" for perpetrating a "scam" and a "ripoff" for refusing to process customer rebates.[9]

56.     The internet is rife with complaints about Menards' rebate program, with consumers airing their grievances on Twitter, Facebook, the Better Business Bureau website,[10] and a number of consumer complaint message boards,[11] as highlighted below:

- "I bought over $900.00 worth of merchandise at Menards in Toledo, [OH] on 8-25-2018 I have a rebate coming for $99.68 that I have been waiting 9 weeks so far and haven't seen yet. I spoke with the manager at the Menards store once and the *** manager twice. […] Each time all they say is wait longer. I found out the rebate was issued on 9-25-18 and I told the manager this info, and all he keeps saying is wait a little longer. It is now 10-24-2018 and still nothing [.]  They keep saying they will e-mail to find out about my rebate. They said they have no phone number to call."[12]

- "Will not be shopping @Menards w/its 11% rebate scam.  Mail-in but no coupons at cash register.  Only at Cust. Serv. Desk. Mail in for store rebate – NOT cash back.  How many people don't bother? Most people, probably. Lowes w/better quality – here I come!"[13]

57.     The majority of the complaints reference consumers who never obtained their rebate checks altogether. A sampling of these complaints includes:

- "Menards RIPOFF 11% Rebate!  Have any of you been ripped off and not received your Rebate??  During the Menards 11% rebate we purchased a new Ultra deck and spent $14,800 the rebate should have totaled $1,608.96.   We applied for the rebates in September.  The rebate company said they have mailed several refunds that we have not

---

[9]     *See infra*, n. 15-17.

[10]    *See,    e.g.,*    https://www.bbb.org/us/wi/elk-mound/profile/business-services/rebate-international-0694-44002999 (last visited January 22, 2020); https://www.bbb.org/us/wi/elk-mound/profile/business-services/rebate-international-0694-44002999/complaints (last visited January 22, 2020); https://www.bbb.org/us/il/hanover-park/profile/building-materials/menard-inc-0694-5000090/complaints (last visited January 22, 2020).

[11]    *See* https://menards.pissedconsumer.com/11-rebate-scam-201810241387951.html (last visited January 22, 2020); https://www.consumeraffairs.com/retail/menards.html (last visited January 22, 2020).

[12]    *See* https://menards.pissedconsumer.com/11-rebate-scam-201810241387951.html (last visited January 22, 2020).

[13]    *See* Pamela Kramer (@pamkramer), Twitter (April 12, 2018 at 8:26 AM), available at https://twitter.com/pamkramer/status/984422515996069888.

received.  Has this happened to anyone else?  I will be filing a legal complaint with the Minnesota Attorney General."[14]

- "Too bad I rang up $1600 plus and never received rebate.  Contact customer service no response MENARDS rip-off con artists."[15]

- "@Menards 11% Rebate is a total scam.  My second over $200 rebate never shows up. And u can't speak to one person about it to help you. #SCAM."[16]

- "I keep stellar records and have over 14 rebates that show processed on Menard's web site, yet have not received one penny from them. [...] We have several rebates that show were issued but we never received them."[17]

58.     Other complaints are from consumers who got a reduced rebate, but never found out

why. A sampling of these complaints includes:

- "Back in July I spent almost $2500 at Menards in Owensboro Ky was to get back $252 and some change back I have sent email mailed them and Menards letters and Rebate international sent an email stating the check was not cashed of course it wasn't cashed I never got it they said they would issue another one guess what still haven't got it.  I'm calling the BBB and everyone that might can help this is b[redacted] I'll take my business else where's can't trust them to do what right by the customer"[18]

- "I have never shopped at Menards but decided when I needed to purchase building materials that I would take advantage of the 11% Rebate.  All receipts and forms were sent in within the correct time frame, but after waiting for several weeks and after multiple emails, I received a response that they could issue a stop payment, issue another check and within three days of the email, they would mail the rebate check.  I have submitted THREE different rebates to other companies since my initial rebate application to Rebates International and have already received ALL THREE of those rebates.  According to the Rebates International website the check was process and should have been mailed, but here I am again after several weeks with no response and no rebate.  The excuse has been

---

[14]     *See*  Bill  Dobbins,  Facebook  (December  17,  2017  at  4:51  PM),  *available  at* https://www.facebook.com/pg/Thedobbinsgroup/posts/?ref=page_internal (last visited January 22, 2020).

[15]     *See*  Dan  Lange  (@dlange529),  Twitter  (May  17,  2018  at  11:20  AM),  available  at https://twitter.com/dlange529/status/997149935580729344 (last visited January 22, 2020).

[16]     *See*  Ben  Eisenhart  (@BEisenhart),  Twitter  (Sept.  11,  2017  at  10:25  PM),  *available  at* https://twitter.com/BEisenhart/status/907444981207629825 (last visited January 22, 2020).

[17]     *See*  Menards  –  Over  14  not  received  11%  rebates,  pissedconsumer.com,  available  at menards.pissedconsumer.com/over-14-not-received-11-rebates-201704031029419.html (last visited January 22, 2020).

[18]     *Rebates International-Menards Reviews*, Revdex.com, *available at* https://www.revdex.com/reviews/rebates-international-menards/3005226 (last visited January 22, 2020).

that they use a postcard to send the rebate, but all the information that I have discovered is that while a postcard is not first class mail, a postcard should arrive within 5-10 business days.  THAT HAS NOT BEEN MY EXPERIENCE!"[19]

59.    Despite advertising hundreds of millions of dollars in available rebates every year and representing to customers that they would "save big money", Menards does not honor the benefit of the bargain it strikes with its customers.  Menards systematically and routinely denies or substantially underpays promised rebates and takes steps to further drive down the redemption rate.

## FACTS SPECIFIC TO PLAINTIFFS

### *Plaintiff Debbie Rider*

60.    On or about March 2018, Plaintiff Debbie Rider, an Illinois resident, went to a Menards location in Forsyth, Illinois, to purchase a washer, dryer, microwave and building supplies during the 11% off everything promotion.

61.    Rider purchased these products from Menards for a total of approximately $878.77.

62.    After completing her purchase, Rider went to the rebate center within the Menards location and retrieved the store-wide 11% off rebate coupons.

63.    Shortly after her purchases, Rider filled out the rebate coupons and, as instructed by Menards, included her receipts in envelopes addressed to P.O. Box 99, Elk Mound, WI 54739-0155.

64.    Rider then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate. After eight weeks, Rider checked the Rebates International rebate tracker (https://www.rebateinternational.com/ RebateInternational/tracking.do); but did not see a rebate.

---

[19]     *Rebates International-Menards Reviews*: Mar. 3, 2019 Complaint from angrymenardscustomer, Revdex.com, *available at* https://www.revdex.com/reviews/rebates-international-menards/3005226 (last visited January 22, 2020).

65.     Rider contacted Rebates International to follow up regarding the status of her rebate. Rebates International informed Rider via telephone that they did not receive her rebate voucher or receipt, even though she had received smaller rebates from Menards without issue in the past.

66.     Menards breached its contract with Rider by failing to send the rebate checks to Rider at all, or by failing to send the full amount promised.

67.     Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate, Rider was denied the approximately $96.66 in rebates to which she was entitled.

**_Plaintiff Steve Schussler_**

68.     On September 9, 2017, Plaintiff Steve Schussler, an Illinois resident, purchased from his local Menards store in Matteson, Illinois, wood for his deck during the Menards 11% Off Everything promotion for a total of approximately $3,429.09.

69.     After completing his purchase, Schussler went to the rebate center within the Menards location and retrieved the store-wide 11% off rebate coupon.

70.     Shortly thereafter, Schussler filled out the rebate coupon and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 99, Elk Mound, WI 54739-0155.

71.     Schussler then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate. Schussler never received a rebate.

72.     Menards breached its contract with Schussler by failing to send the rebate checks to Schussler at all, or by failing to send the full amount promised.

73.     Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate, Schussler was denied the approximately $377.20 in rebates to which he was entitled.

**_Plaintiff Trent Shores_**

16

74.     On or about July 12, 2017, Plaintiff Trent Shores, an Illinois resident, purchased from his local Menards store in Galesburg, Illinois, siding during Menards' 11% Off Everything promotion for a total of approximately $3,850.75.  Shores was told during his purchase by Menards's employees that even though the siding was a special purchase, it still qualified for the 11% Off Everything sale.

75.     After completing his purchase, Shores went to the rebate center within the Menards location and retrieved the store-wide 11% off rebate coupon.

76.     Within a week of completing his purchase, Shores filled out the rebate coupon and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 99, Elk Mound, WI 54739-0155.

77.     Shores then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate. Shores and his wife emailed Rebates International to follow up regarding the status of this rebate on numerous occasions.  Ultimately, Shores was told that Rebates International did not receive his paperwork, and a rebate would not be forthcoming.

78.     In or about November 2017, Shores purchased a dishwasher during a Menards 11% Off Everything sale.  The sale was advertised at the front of the Menards store, and in numerous locations throughout the store, including right in front of the dishwasher that he purchased.

79.     Shores purchased the dishwasher for approximately $700.

80.     After purchasing the dishwasher, Shores went to the rebate center within the Menards location and retrieved the store-wide 11% Off rebate coupon.

81.     Within a week of completing his purchase, Shores filled out the rebate coupon and again mailed it to the Elk Mound, Wisconsin address as instructed by Menards.

82.     Shores did not receive any rebate for his dishwasher purchase, either.

17

83.     As a result of Menards' repeated failure to provide him with the advertised rebate, Shores and his wife no longer shop at Menards.

84.     Menards breached its contract with Shores by failing to send the rebate checks to Shores at all, or by failing to send the full amount promised.

85.     Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate, Shores was denied the approximately $500.58 in rebates to which he was entitled.

**_Plaintiff Barry Earls_**

86.     On or about June 17, 2017, Plaintiff Barry Earls, a Michigan resident, went to a Menards location in South Haven, Michigan, to purchase a garage pole barn garage package during the 11% Off Everything promotion.

87.     Earls purchased the pole barn garage package for a total of approximately $6,959.60.

88.     After completing his purchase, Earls went to the rebate center within the Menards location and retrieved the store-wide 11% Off rebate coupon.

89.     Within one week of completing his purchase, Earls filled out the rebate coupon and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 995, Elk Mound, WI 54739-0155.

90.     Upon information and belief, Earls' purchase was eligible for approximately $756.56 in rebates based upon the 11% Off Everything promotion.

91.     However, on or about November 2017, Earls only received a rebate for approximately $456.

92.     In November 2017, Earls contacted Rebates International via e-mail to dispute the amount of his rebate.  Per Rebates International's instructions, Earls resubmitted his paperwork. However, that same month Earls received a letter from Rebates International, without further

explanation, stating that the remainder of his rebate would not be forthcoming.  Earls discussed this letter from Rebates International with a store manager from Menards shortly thereafter.  The store manager told him that she did not understand why Earls did not receive the full amount of rebate because he "did everything right."

93.     Earls has only ever received approximately $456 in rebates, despite completing all the prerequisites of Menards' rebate program.

94.     Menards breached its contract with Earls by failing to send the rebate checks to Earls at all, or by failing to send the full amount promised.

95.     Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate, Menards denied Earls approximately $300 in rebates to which he was entitled.

**_Plaintiff Ryan Ingalls_**

96.     In or about January 2019, Plaintiff Ryan Ingalls, a Michigan resident, went to a Menards location in South Haven, Michigan, to purchase electrical and roofing materials during the 11% Off Everything promotion.

97.     Ingalls purchased PVC boxes, ridge vents, and concealed stringer hangers from Menards for a total of approximately $177.41.

98.     After completing his purchase, Ingalls went to the rebate center within the Menards location and retrieved the store-wide 11% Off rebate coupon.

99.     Within one week of completing his purchase, Ingalls filled out the rebate coupon and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 99, Elk Mound, WI 54739-0155.

100.    Ingalls then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate.

19

101.     Ingalls     checked     the     Rebates     International     rebate     tracker (https://www.rebateinternational.com/RebateInternational/tracking.do); but did not see a rebate for his purchase of $177.41.

102.     Ingalls purchased products that Menards advertised as eligible for rebate under the 11% rebate campaign.

103.     Upon information and belief, and unbeknownst to Ingalls and undisclosed by Menards prior to the completion of the sale, Menards denied Ingalls the advertised 11% rebate.

104.     Menards breached its contract with Ingalls by failing to send the rebate checks to Ingalls at all, or by failing to send the full amount promised.

105.     Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate of $19.50, Ingalls was denied the full amount of the rebate to which he was entitled.

***Plaintiff David Kiel***

106.     In or about late July 2017, Plaintiff David Kiel, a Michigan resident, went to a Menards location in Bay City, Michigan, to purchase carpet, padding and tile flooring during Menards' 11% Off everything promotion.

107.     Kiel purchased these products from Menards for a total of approximately $2,816.

108.     After completing his purchase, Kiel went to the rebate center within the Menards location and retrieved the store-wide 11% Off rebate coupon.

109.     Within a few days of completing his purchase, Kiel and his wife filled out the rebate coupon and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 99, Elk Mound, WI 54739-0155.

110.     Kiel then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate. Kiel tried checking the Rebates International

20

rebate tracker (https://www.rebateinternational.com/ RebateInternational/tracking.do); but the website was confusing, and he was discouraged because there was no phone number to contact Rebates International directly to discuss his rebate. Kiel never received any rebate from Menards.

111.     Menards breached its contract with Kiel by failing to send the rebate checks to Kiel at all, or by failing to send the full amount promised.

112.     Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate, Kiel was denied the approximately $256 in rebates to which he was entitled.

**_Plaintiff Cassie Lietaert_**

113.     In or about September, 2017, Plaintiff Cassie Lietaert, a Michigan resident, went to a Menards location in Traverse City, Michigan, to purchase a refrigerator during the 11% Off Everything promotion.

114.     Lietaert purchased the refrigerator from Menards for a total of approximately $956.71.

115.     After completing her purchase, Lietaert went to the rebate center within the Menards location and retrieved the store-wide 11% off rebate coupon.

116.     Within less than one week of completing her purchase, Lietaert filled out the rebate coupon and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 99, Elk Mound, WI 54739-0155.

117.     Lietaert then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate. After ten weeks, Lietaert checked the Rebates International rebate tracker (https://www.rebateinternational.com /RebateInternational/tracking.do); and found that the rebate had been processed, but she never received a rebate voucher.

118.    Lietaert contacted Rebates International regarding the status of her rebate, and in November 2017, Rebates International informed Lietaert via email that it had never received her rebate.

119.    Menards breached its contract with Lietaert by failing to send the rebate checks to Lietaert at all, or by failing to send the full amount promised.

120.    Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate, Menards unfairly and deceptively denied Lietaert the approximately $105.23 in rebates to which she was entitled.

**_Plaintiff Nazar Mansoor_**

121.    Between May and July 2018, Plaintiff Nazar Mansoor, a Michigan resident, went to a Menards location in Livonia, Michigan, to purchase masonry, stain gallons, and tools during the 11% Off Everything promotion.

122.    Mansoor purchased these products from Menards for a total of approximately $380.00.

123.    After completing his purchases, Mansoor went to the rebate center within the Menards location and retrieved the store-wide 11% Off rebate coupons associated with his purchases.

124.    Within two to three days of completing his purchases, Mansoor filled out the appropriate rebate coupons and, as instructed by Menards, included them in the envelopes he addressed to P.O. Box 99, Elk Mound, WI 54739-0155.

125.    Mansoor then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate. After eight weeks, Mansoor stopped by the customer service desk at the Menards in Livonia, Michigan to inquire about the status of his rebate. Mansoor was told that he probably had not received the rebate yet and should keep checking his mail. One month later, Mansoor again visited his local Menards store and asked the customer service desk

22

about the status of his rebate.  He was told that Menards did not handle the rebates, and that he would have to check with Rebates International.

126.    Mansoor contacted Rebates International in late 2018 via the contact information form at www.rebatesinternational.com. However, Mansoor never received a response to his inquiry.

127.    Mansoor continued to visit the customer service desk of his local Menards until January 2019 to inquire about the status of his rebate.  To this date, Mansoor has not received a rebate check.

128.    Menards breached its contract with Mansoor by failing to send the rebate checks to Mansoor at all, or by failing to send the full amount promised.

129.    Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate, Mansoor was denied the approximately $98 in rebates to which he was entitled.

### *Plaintiff Cody Italia*

130.    In the past five years, Plaintiff Cody Italia, a Missouri resident, has spent a total of approximately $5,000 at Menards. Italia has spent a minimum of approximately $21 on dog food on a bi-weekly basis in the past eighteen months.

131.    On or about February 2, 2019, Italia went to a Menards location in Popular Bluff, Missouri, to purchase dog food during the 11% Off Everything promotion.

132.    Italia purchased these products from Menards for a total of approximately $21.99.

133.    After completing his purchase, Italia went to the rebate center within the Menards location and retrieved the store-wide 11% Off rebate coupon.

134.    That same day, Italia filled out the rebate coupon and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 99, Elk Mound, WI 54739-0155.

23

135.    Italia then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate. Italia checked the Rebates International rebate tracker (https://www.rebateinternational.com/RebateInternational/tracking.do); but did not see a rebate.

136.    Italia contacted the Menards by phone regarding the status of his rebate, but he never received an explanation or a rebate voucher.

137.    Menards denied Italia the approximately $2.42 in rebates to which he was entitled based on rebate restrictions not disclosed to Italia or the public prior to purchase.

138.    Italia purchased products that Menards advertised as eligible for rebate under the 11% rebate campaign that were also eligible for a separate product-specific rebate.

139.    Menards breached its contract with Italia by failing to send the rebate checks to Italia at all, or by failing to send the full amount promised.

140.    Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate, Italia was denied the approximately $2.42 in rebates to which he was entitled.

### *Plaintiff Thomas Fetsch*

141.    Plaintiff Thomas Fetsch, a North Dakota resident, spends approximately $5,000 on tools, building materials, and groceries per year at Menards stores in North Dakota.  However, he has only received a handful of rebates through the program since 2015.

142.    Between February and July 2016, Fetsch went to a Menards location in Bismarck, North Dakota, to purchase a shop vacuum, smoker pellets, tool sets, and other household supplies during the 11% Off Everything promotion.

143.    Fetsch purchased the products from Menards for a total of approximately $1,430.

24

144.    After completing his purchases during each visit, Fetsch went to the rebate center within the Menards location and retrieved the store-wide 11% Off rebate coupon.

145.    The same day he completed his purchase, Fetsch filled out the rebate coupon and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 99, Elk Mound, WI 54739-0155.

146.    Fetsch then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate.  After waiting for six to eight weeks, Fetsch checked the Rebates International rebate tracker (https://www.rebateinternational.com /RebateInternational/tracking.do); and found that there were no pending rebates. There was no indication that his rebates had been processed.

147.    Fetsch contacted Rebates International regarding the status of his rebates, and in December 2016, Rebates International informed Fetsch via e-mail that they did not have a record of his original or rebate receipts.

148.    Menards breached its contract with Fetsch by failing to send the rebate checks to Fetsch at all, or by failing to send the full amount promised.

149.    Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate, Fetsch was denied approximately $157.31  in rebates to which he was entitled.

### *Plaintiff Karen Fleckenstein*

150.    In or about July 2019, Plaintiff Karen Fleckenstein, an Ohio resident, went to a Menards location in Mentor, Ohio, to purchase fence panels during the 11% Off Everything promotion.

151.    Fleckenstein purchased multiple items, including food, children's toys, and post cap lights, for Menards for a total of approximately $33.47.

152.    After completing her purchase, Fleckenstein went to the rebate center within the Menards location and collected the store-wide 11% off rebate coupon.

153.    Within one week of completing her purchase, Fleckenstein filled out the rebate coupon and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 99, Elk Mound, WI 54739-0155.

154.    Fleckenstein then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate. Fleckenstein checked the Rebates International rebate tracker (https://www.rebateinternational.com/ RebateInternational/tracking.do) but did not see a rebate.

155.    To this date Fleckenstein has not received a rebate voucher from Menards for approximately $3.68.

156.    Menards breached its contracts with Fleckenstein by failing to send the rebate check to Fleckenstein at all or by failing to send the full amount promised.

157.    Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate, Fleckenstein was denied the approximately $3.68 in rebates to which she was entitled.

***Plaintiff Amy Childers***

158.    In or about October 2018, Plaintiff Amy Childers, a Wisconsin resident, visited the www.menards.com website to purchase fence panels online during the advertised 11% Off Everything promotion.

159.    Childers purchased the fence panels from Menards for a total of approximately $1,327.56.

160.    After completing her purchase, Childers then downloaded the appropriate rebate coupon corresponding to her purchase from the online Menards Rebate Center.

161.    Within one week of completing her purchase, Childers filled out the rebate coupon, attached her original receipt and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 995, Elk Mound, WI 54739-0155.

162.    Childers then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate.

163.    After eight weeks, Childers checked the Rebates International rebate tracker (https://www.rebateinternational.com/RebateInternational/tracking.do); and found that the rebate had still not been processed and was never even entered into the online tracking system.

164.    In December 2018, Rebates International informed Childers via email that her purchase did not qualify for the Menards 11% Off rebate because the items that she purchased were already on sale and therefore did not qualify for a rebate.

165.    The fact that the fence panels did not qualify for a rebate because they were on sale when she purchased them was not disclosed to Childers prior to her purchase. Before purchasing the fencing panels online, Childers saw language on Menards' webpage that there was an "11% Rebate on Everything." There was no disclosure, at any point before she bought the panels, that the fencing panels she was about to purchase were on sale and ineligible for the 11% rebate.

166.    Menards breached its contract with Childers by failing to send the rebate checks to Childers at all, or by failing to send the full amount promised.

167.    Menards unfairly and deceptively denied Childers the approximately $146.03 in rebates to which she was entitled.

**_Plaintiff Chris Jesse_**

168.    On August 23, 2017, Plaintiff Chris Jesse, a Wisconsin resident,  went to a Menards location in Antigo, Wisconsin, to purchase building materials, a furnace, boiler, and piping during the 11% Off Everything promotion.

27

169.    Jesse purchased the building materials, furnace, boiler and piping for a total of approximately $2,825.35.

170.    After completing his purchase, Jesse went to the rebate center within the Menards location and retrieved the store-wide 11% Off rebate coupon. His purchase was eligible for approximately $310 in rebates based upon the 11% Off Everything promotion.

171.    On the same day after completing his purchase, Jesse filled out the rebate coupon and, as instructed by Menards, included it in a single envelope addressed to P.O. Box 995, Elk Mound, WI 54739-0155.

172.    Jesse then waited well beyond the six-to-eight week period for rebate processing and mailing quoted by Menards, without receiving any rebate. Jesse checked the Rebates International rebate tracker (https://www.rebateinternational.com/RebateInternational /tracking.do) and found no record that his rebate had been issued. Jesse also contacted Menards customer service, who mentioned that they had no record of his rebate.

173.    Because of Menards' unfair and deceptive practices and breach of its representations regarding the promised 11% rebate Menards unfairly and deceptively denied Jesse the approximately $310 in rebates to which he was entitled.

## CLASS ACTION ALLEGATIONS

174.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of themselves and classes of similarly situated individuals defined as follows:

> **Nationwide Mail-In Rebate Class**: All customers who have a processed rebate registered in the Rebates International rebate tracker but who did not realize the full 11% rebate which was promised under Menards' 11% Off Everything promotion.

> **Illinois Mail-In Rebate Class**: All residents of the State of Illinois who have a processed rebate registered in the Rebates International rebate tracker but who did not realize the full 11% rebate promised under Menards'11% Off Everything promotion.

**Michigan Mail-In Rebate Class**: All residents of the State of Michigan who have a processed rebate registered in the Rebates International rebate tracker but who did not realize the full 11% rebate which was promised under Menards'11% Off Everything promotion.

**Missouri Mail-In Rebate Class**: All residents of the State of Missouri who have a processed rebate registered in the Rebates International rebate tracker but who did not realize the full 11% rebate which was promised under Menards'11% Off Everything promotion.

**North Dakota Mail-In Rebate Class:** All residents of the State of North Dakota who have a processed rebate registered in the Rebates International rebate tracker but who did not realize the full 11% rebate which was promised under Menards'11% Off Everything promotion.

**Ohio Mail-In Rebate Class:** All residents of the State of Ohio who have a processed rebate registered in the Rebates International rebate tracker but who did not realize the full 11% rebate which was promised under Menards'11% Off Everything promotion.

**Wisconsin Mail-In Rebate Class**: All residents of the State of Wisconsin who have a processed rebate registered in the Rebates International rebate tracker but who did not realize the full 11% rebate which was promised under Menards' 11% Off Everything promotion.

175. Excluded from the Classes identified above are (1) Menards, Menards' agents, subsidiaries, parents, successors, predecessors, and any entity or entities in which Menards or its parents have a controlling interest, and that entity's or those entities' current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

176. **Numerosity**: The exact size of each Class is unknown and is not available to Plaintiffs at this time, but individual joinder in this case is impracticable. The Classes likely consist of thousands of individuals as evidenced, among other things, by the numerous complaints submitted online.  Class members will be identified through Menards' records.

177. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

a)   Whether Menards had a policy or practice of sending rebate checks to consumers through junk mailers in order to deceive Plaintiffs and other members of the Classes into discarding them and thus not using the rebate checks inside;

b)   Whether Menards engaged in deceptive and misleading practices through its mail-in rebate program as described herein and violated public policy;

c)   Whether Menards engaged in practices through its mail-in rebate program as described herein in order to breach its contracts with Plaintiffs and other members of the Classes;

d)   Whether Menards engaged in practices as described herein which resulted in a breach of the implied covenant of good faith and fair dealing with Plaintiffs and other members of the Classes;

e)   Whether Menards engaged in practices as described herein in order to retain monies belonging to Plaintiffs and other members of the Classes and unjustly enriched itself;

g)   Whether as a result of Menards' policies and practices, Plaintiffs and the other members of the Classes have suffered monetary losses;

h)   Whether Plaintiffs and the members of the Classes are entitled to monetary, punitive and/or restitutionary remedies and, if so, the nature of those remedies; and

i)   Whether Menards should be enjoined from continuing to engage in such practices.

178. **Typicality**: Plaintiffs' claims are typical of the claims of the other members of their respective Classes. Plaintiffs and the members of the Classes sustained damages as a result of Menards' uniform wrongful conduct regarding valid rebates it offered to Plaintiffs and the members for the Classes.

179. **Adequacy**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex litigations and class

actions. Plaintiffs have no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiffs.

180.   **Superiority**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Classes are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendant's actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Classes to obtain effective relief from Defendant. Even if members of the Classes themselves could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court and require duplicative consideration of the legal and factual issues presented herein. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION

### Breach of Contract
### (On Behalf of Plaintiffs and the Nationwide Mail-In Rebate Class)

181.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

182.   By filling in and submitting their redemption tickets to redeem their 11% rebate for their purchases at Menards stores, Plaintiffs and the Nationwide Mail-In Rebate Class entered into specific agreements with Menards. Through the redemption tickets, Menards offered rebates and Plaintiffs and the Nationwide Mail-In Rebate Class members agreed to purchase products under the premise that they would receive the corresponding rebate checks, to be used at Menards for future purchases.

183.    Specifically, through weekly advertisements, in-store signs, online advertisements, rebate forms, and receipts, Menards represented and promised to provide Plaintiffs and the Nationwide Mail-In Rebate Class rebate checks for a specified amount *after* they purchased certain products and properly submitted a mail-in rebate.

184.    Based on the rebate forms that they filled out and submitted, Plaintiffs and the Nationwide Mail-In Rebate Class agreed to purchase the products that were eligible for rebate. That is, Plaintiffs and the Nationwide Mail-In Rebate Class paid, and Menards accepted, the purchase price for the products and submitted valid rebate applications, and therefore performed their obligations under the specific rebate forms.

185.    Menards materially breached its specific contracts with Plaintiffs and the Nationwide Mail-In Rebate Class by failing to send the rebate checks at all or by failing to send the full amount promised to Plaintiffs and the Nationwide Mail-In Rebate Class members.

186.    These breaches of contract have directly and proximately caused Plaintiffs and the Nationwide Mail-In Rebate Class economic injury, including the amount of the rebates that should have been conspicuously issued for individuals who properly submitted rebate applications, as well as the interest that should have been accrued following the promised six-to-eight week processing time.

### SECOND CAUSE OF ACTION

**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiffs and the Nationwide Mail-In Rebate Class)**

187.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

188.    If the Court finds Menards ultimately fulfilled the terms of its contracts, then Menards has still breached the implied covenant of good faith and fair dealing.

189.    Implicit in Menards' specific contracts, namely its rebate forms, with Plaintiffs and Nationwide Mail-In Rebate Class were provisions prohibiting Menards from engaging in conduct that

frustrated or impaired Plaintiffs' and the Nationwide Mail-In Rebate Class's rights to receive the full benefits of the agreements.

190.     Menards acted unreasonably and evaded the spirit of the bargain, and thus breached the implied covenant of good faith and fair dealing, by failing to send the rebate checks at all or by failing to send the full amount promised to Plaintiffs and the Nationwide Mail-In Rebate Class members.

191.     The aforementioned breaches have directly and proximately caused Plaintiffs and the Nationwide Mail-In Rebate Class economic injury, including, but not limited to, denying them the money that was promised through the rebate program, as well as the interest that should have been accrued following the promised six-to-eight week processing time.

## THIRD CAUSE OF ACTION

### Unjust Enrichment
### *In the Alternative to Claims for Breach of Contract and Implied Covenant of Good Faith and Fair Dealing*
### (On Behalf of Plaintiffs and the Nationwide Mail-In Rebate Class)

192.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

193.     If the Court finds Plaintiffs' and the Nationwide Mail-In Rebate Class's contracts with Menards invalid, non-existent, or unenforceable, Plaintiffs and the members of the Nationwide Mail-In Rebate Class may be left without any adequate remedy at law.

194.     Plaintiffs and the Nationwide Mail-In Rebate Class have conferred a benefit upon Menards in the form of the money it charged and collected from them when they purchased products with the promise of a rebate.

195.     Menards' practice of failing to send the promised rebate checks at all or by failing to send the full amount promised to Plaintiffs and the Nationwide Mail-In Rebate Class members resulted in Plaintiffs and members of the Nationwide Mail-In Rebate Class being denied the benefit of redeeming their full rebates as promised.  Further, Menards benefits because its rebate program is

designed to reduce the issuance of and to discourage customers' redemption of rebates, because rebate checks are mailed to customers in cardstock junk mailers displaying advertisements. Menards appreciates and/or has knowledge of the benefits conferred upon it by Plaintiffs and the Nationwide Mail-In Rebate Class.

196.    Under principles of equity and good conscience, Menards should not be permitted to retain the monies belonging to Plaintiffs and the Nationwide Mail-In Rebate Class that they unjustly received as a result of its wrongful conduct described herein.

197.    Accordingly, Plaintiffs, on behalf of themselves and the other members of the Nationwide Mail-In Rebate Class, seek restitution and disgorgement of all amounts that should have been paid to them, by which Menards has been unjustly enriched.

## FOURTH CAUSE OF ACTION

### Violation of Wis. Stat. § 100.18
### (On Behalf of Plaintiffs and the Wisconsin Mail-In Rebate Class)

198.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

199.    Wis. Stat. § 100.18 prohibits a corporation from making any advertisement, announcement, representation, or statement of fact which is untrue, deceptive, or misleading with the intent to sell, distribute, increase the consumption of or in any way dispose of any real estate, merchandise, securities, employment, services, or anything offered by such corporation.

200.    Wis. Stat. § 100.18 applies to Menards' actions and conduct described herein because Menards advertised, announced, represented, and otherwise made statements of fact in connection with the sale of merchandise in Wisconsin.

201.    Menards' actions in affirmatively representing and advertising specific rebates and then imposing undisclosed rebate limitations violates Wis. Stat. § 100.18(1) and (9)(a) and, as described herein, have resulted, and will result, in damages to Plaintiffs and the members of the Wisconsin Mail-In Rebate Class.

34

202.    Upon information and belief, and given the fact that Menards offered, implemented and/or managed the Menards rebate program, Menards knew or should have known that it deceptively and unfairly advertised the Menards rebate program to consumers, and misrepresented the amount of the rebate checks mailed to customers.

203.    Specifically, Menards promised consumers, through its "11% Off Everything" rebate promotion, that if they purchased any product at Menards during the promotion and timely sent in a completed rebate form, they would receive a rebate check amounting to 11% of the value of their purchase within 6-8 weeks.

204.    Despite those promises, Menards did not provide a full rebate check to the members of the Wisconsin Mail-In Rebate Class and minimized its rebate obligations.

205.    Menards also sent Plaintiffs' rebate checks far outside the six to eight week processing period, if it sent the checks at all.

206.    Menards represented to consumers that the "after mail-in rebate" prices listed in store could feasibly be obtained by the average consumer following the prescribed rebate process.

207.    As a direct and proximate cause of Menards' deceptive and unfair trade practices, Plaintiffs and the Wisconsin Mail-In Rebate Class suffered actual damages, including monetary losses for the amount of the rebate check they should have (but did not) receive, as well as monetary losses for the purchase price of the product altogether (as they would have chosen not to purchase the product or to purchase it elsewhere).

208.    Menards' failure to fulfill its rebate obligations to Plaintiffs and the Wisconsin Mail-In Rebate Class members was unfair, deceptive, and misleading.

209.    Menards' conduct is in violation of Wis. Stat. § 100.18(1) and (9)(a), and Plaintiffs and the members of the Wisconsin Mail-In Rebate Class are thus entitled to damages totaling twice the amount of pecuniary loss, costs, reasonable attorney's fees, injunctive relief prohibiting Defendant's

untrue, deceptive, and misleading advertising going forward, and any other penalties or awards that may be appropriate under applicable law.

## FIFTH CAUSE OF ACTION

**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 ILCS 505/1, *et seq.***
**(On Behalf of Plaintiffs and the Illinois Mail-In Rebate Class)**

210.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

211.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

212.    The ICFA prohibits any unlawful, unfair, or fraudulent business acts or practices including the employment of any deception, fraud, false pretense, false promise, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act". 815 ILCS 505/2.

213.    The ICFA applies to Menards' actions and conduct described herein because its conduct resulted in the sale of goods and services in Illinois.

214.    As a corporation, Menards is a "person" as defined by Section 505/1(c) of the ICFA.

215.    The goods Menards sold to Plaintiffs were "merchandise" within the meaning of Section 505/1(b) of the ICFA, and the Menards' sale of those items was considered "trade" or "commerce" under Section 505/1(f) of the ICFA.

216.    Menards' actions in affirmatively representing and advertising specific rebates and failing to pay offends public policy, deceived Plaintiffs and the Illinois Mail-In Rebate Class and as

described herein, and have resulted, and will result in, damages to Plaintiffs and the members of the Illinois Mail-In Rebate Class.

217.    Upon information and belief, and given the fact that Menards offered, implemented and/or managed the Menards rebate program, Menards knew or should have known that it deceptively and unfairly advertised the Menards rebate program to consumers, and misrepresented the amount of the rebate checks mailed to customers.

218.    Specifically, Menards promised consumers, through its "11% Off Everything" rebate promotion, that if they purchased any product at Menards during the promotion and timely sent in a completed rebate form, they would receive a rebate check amounting to 11% of the value of their purchase within six to eight weeks.

219.    Despite those promises, Menards did not provide a full rebate check to the members of the Illinois Mail-In Rebate Class and minimized its rebate obligations.

220.    Menards also sent Plaintiffs' rebate checks far outside the six to eight week processing period, if it sent the checks at all.

221.    Defendant represented to consumers that the "after mail-in rebate" prices listed in store could feasibly be obtained by the average consumer following the prescribed rebate process.

222.    As a direct and proximate cause of Menards' deceptive and unfair trade practices, Plaintiffs and the Illinois Mail-In Rebate Class suffered actual damages, including monetary losses for the amount of the rebate check they should have (but did not) received, and monetary losses for the purchase price of the product altogether (as they would have chosen not to purchase the product or to purchase it elsewhere).

223.    As a result of Defendant's material misrepresentations regarding Menards, Defendant violated section 501/2(a)(9) of the Uniform Deceptive Trade Practices Act ("DTPA") which proscribes "advertis[ing] goods or services with intent not to sell them as advertised."

224.     Menards' failure to fully and timely fulfill its rebate obligations to Plaintiffs and the Illinois Mail-In Rebate Class members was unfair and deceptive.

225.     Menards' conduct is in violation of the ICFA, and Plaintiffs and the members of the Illinois Mail-In Rebate Class are thus entitled to damages totaling twice the amount of pecuniary loss, costs, reasonable attorney's fees, injunctive relief prohibiting Defendant's unfair and deceptive advertising going forward, and any other penalties or awards that may be appropriate under applicable law.

<u>**SIXTH CAUSE OF ACTION**</u>

**Violation of the Michigan Consumer Protection Act**
**Mich. Comp. Laws § 445.901, *et seq.***
<u>**(On Behalf of Plaintiffs and the Michigan Mail-In Rebate Class)**</u>

226.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

227.     The Michigan Consumer Protection Act, Mich. Comp. Laws §445.901, *et seq.* ("MCPA"), prohibits unfair, unconscionable, or deceptive methods, acts or practices in the conduct of trade or commerce.

228.     Namely, under §445.903, the MCPA prohibits false advertising in the conduct of trade or commerce.

229.     The MCPA applies to Menards' actions and conduct described herein because the deceptive methods, acts and practices occurred in the conduct of trade or commerce in Michigan.

230.     As a corporation, Menards is a "person" as defined by MCPA Section 445.902(d).

231.     Menards' actions in affirmatively representing and advertising specific rebates and then failing to pay offends public policy, deceived Plaintiffs and the Michigan Mail-In Rebate Class as described herein, and have resulted, and will result, in damages to Plaintiffs and the members of the Michigan Mail-In Rebate Class.

232.    Upon information and belief, and given the fact that Menards offered, implemented and/or managed the Menards rebate program, Menards knew or should have known that it deceptively and unfairly advertised the Menards rebate program to consumers, and misrepresented the amount of the rebate checks mailed to customers.

233.    Specifically, Menards promised consumers, through its "11% Off Everything" rebate promotion, that if they purchased any product at Menards during the promotion and timely sent in a completed rebate form, they would receive a rebate check amounting to 11% of the value of their purchase within six to eight weeks.

234.    Despite those promises, Menards did not provide a full rebate check to the Michigan Mail-In Rebate Class and minimized its rebate obligations.

235.    Menards also sent Plaintiffs' rebate checks far outside the six to eight week processing period, if it sent the checks at all.

236.    Defendant represented to consumers that the "after mail-in rebate" prices listed in store could feasibly be obtained by the average consumer following the prescribed rebate process.

237.    As a direct and proximate cause of Menards' deceptive and unfair trade practices, Plaintiffs and the Michigan Mail-In Rebate Class suffered actual damages, including monetary losses for the amount of the rebate check they should have (but did not) received, as well as monetary losses for the purchase price of the product altogether (as they would have chosen not to purchase the product or to purchase it elsewhere).

238.    Menards' failure to fully and timely fulfill its rebate obligations to Plaintiffs and the Michigan Mail-In Rebate Class members was unfair and deceptive.

239.    Menards' conduct is in violation of the MCPA, and Plaintiffs and the members of the Michigan Mail-In Rebate Class are thus entitled to damages totaling twice the amount of pecuniary loss, costs, reasonable attorney's fees, injunctive relief prohibiting Defendant's unfair and deceptive

advertising going forward, and any other penalties or awards that may be appropriate under applicable law.

## SEVENTH CAUSE OF ACTION

### Violation of the Missouri Merchandising Practices Act
### Missouri Rev. Stat. § 407.010, *et. seq.*
### (On Behalf of Plaintiffs and the Missouri Mail-In Rebate Class)

240.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

241.     The Missouri Merchandising Practices Act § 407.010, *et seq.* ("MMPA"), prohibits unfair or deceptive acts or practices in connection with consumer transactions.

242.     The MMPA applies to Menards' actions and conduct described herein because the unfair and deceptive acts or practices occurred in connection with trade or commerce within the meaning of MMPA § 407.010(7).

243.     As a corporation, Menards is a "person" as defined by MMPA § 407.010(5).

244.     Further, under §407.020, the MCPA prohibits false advertising in connection with consumer transactions.

245.     Menards' actions in affirmatively representing and advertising specific rebates and then failing to pay offends public policy, deceived Plaintiffs and the Missouri Mail-In Rebate Class as described herein, and have resulted, and will result in, damages to Plaintiffs and the members of the Missouri Mail-In Rebate Class.

246.     Upon information and belief, and given the fact that Menards offered, implemented and/or managed the Menards rebate program, Menards knew or should have known that it deceptively and unfairly advertised the Menards rebate program to consumers, and misrepresented the amount of the rebate checks mailed to customers.

247.     Specifically, Menards promised consumers, through its "11% Off Everything" rebate promotion, that if they purchased any product at Menards during the promotion and timely sent in a

completed rebate form, they would receive a rebate check amounting to 11% of the value of their purchase within six to eight weeks.

248.    Despite those promises, Menards did not provide a full rebate check to the Missouri Mail-In Rebate Class and minimized its rebate obligations.

249.    Menards also sent Plaintiffs' rebate checks far outside the six to eight week processing period, if it sent the checks at all.

250.    Defendant represented to consumers that the "after mail-in rebate" prices listed in store could feasibly be obtained by the average consumer following the prescribed rebate process.

251.    As a direct and proximate cause of Menards' deceptive and unfair trade practices, Plaintiffs and the Missouri Mail-In Rebate Class suffered actual damages, including monetary losses for the amount of the rebate check they should have (but did not) received, as well as monetary losses for the purchase price of the product altogether (as they would have chosen not to purchase the product or to purchase it elsewhere).

252.    Menards' failure to fully and timely fulfill its rebate obligations to Plaintiffs and the Missouri Mail-In Rebate Class members was unfair, deceptive, and misleading.

253.    Menards' conduct is in violation of the MMPA, and Plaintiffs and the members of the Missouri Mail-In Rebate Class are thus entitled to damages totaling twice the amount of pecuniary loss, costs, reasonable attorney's fees, injunctive relief prohibiting Menards' unfair and deceptive advertising going forward, and any other penalties or awards that may be appropriate under applicable law.

## EIGHTH CAUSE OF ACTION

**Violation of the North Dakota Unfair Trade Practices Law**
**N.D. Cent. Code §§ 51-15-01 – 51-15-11**
**(On Behalf of Plaintiffs and the North Dakota Mail-In Rebate Class)**

254.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

41

255. The North Dakota Unfair Trade Practices Law § 51-15-01, *et seq.* ("UTPL"), prohibits unfair or deceptive acts or practices in connection with consumer transactions.

256. The UTPL applies to Menards' actions and conduct described herein because the unfair and deceptive acts or practices occurred in connection with the sale or advertisement of merchandise within the meaning of UTPL § 51-15-01.

257. Further, under § 51-15-02, the UTPL prohibits false advertising in connection with the sale or advertisement of any merchandise.

258. As a corporation, Menards is a "person" as defined by UTPL § 51-15-01.

259. Menards' actions in affirmatively representing and advertising specific rebates and then failing to pay offends public policy, deceived Plaintiffs and the North Dakota Mail-In Rebate Class as described herein, and have resulted, and will result in, damages to Plaintiffs and the members of the North Dakota Mail-In Rebate Class.

260. Upon information and belief, and given the fact that Menards offered, implemented and/or managed the Menards rebate program, Menards knew or should have known that it deceptively and unfairly advertised the Menards rebate program to consumers, and misrepresented the amount of the rebate checks mailed to customers.

261. Specifically, Menards promised consumers, through its "11% Off Everything" rebate promotion, that if they purchased any product at Menards during the promotion and timely sent in a completed rebate form, they would receive a rebate check amounting to 11% of the value of their purchase within six to eight weeks.

262. Despite those promises, Menards did not provide a full rebate check to the North Dakota Mail-In Rebate Class and minimized its rebate obligations.

263. Menards also sent Plaintiffs' rebate checks far outside the six to eight week processing period, if it sent the checks at all.

42

264.    Defendant represented to consumers that the "after mail-in rebate" prices listed in store could feasibly be obtained by the average consumer following the prescribed rebate process.

265.    As a direct and proximate cause of Menards' deceptive and unfair trade practices, Plaintiffs and the North Dakota Mail-In Rebate Class suffered actual damages, including monetary losses for the amount of the rebate check they should have (but did not) received, as well as monetary losses for the purchase price of the product altogether (as they would have chosen not to purchase the product or to purchase it elsewhere).

266.    Menards' failure to fully and timely fulfill its rebate obligations to Plaintiffs and the North Dakota Mail-In Rebate Class members was unfair, deceptive, and misleading.

267.    Menards' conduct is in violation of the UTPL and Plaintiffs and the members of the North Dakota Mail-In Rebate Class are thus entitled to damages totaling twice the amount of pecuniary loss, costs, reasonable attorney's fees, injunctive relief prohibiting Defendant's unfair and deceptive advertising going forward, and any other penalties or awards that may be appropriate under applicable law.

## NINTH CAUSE OF ACTION

**Violation of the Ohio Consumer Sales Practices Act**
**Ohio Rev. Stat. Ann. § 1345.01, *et seq.***
**(On Behalf of Plaintiffs and the Ohio Mail-In Rebate Class)**

268.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

269.    The Ohio Consumer Sales Practices Act § 1345.01, *et seq.* ("CSPA"), prohibits unfair or deceptive acts or practices in connection with consumer transactions.

270.    The CSPA applies to Menards' actions and conduct described herein because the unfair and deceptive acts or practices occurred in connection with trade or commerce within the meaning of § 1345.01 (A).

271.    As a corporation, Menards is a "person" as defined by § 1345.01 (B).

272.     Menards' actions in affirmatively representing and advertising specific rebates and then failing to pay offends public policy, deceived Plaintiffs and the Ohio Mail-In Rebate Class as described herein, and have resulted, and will result in, damages to Plaintiffs and the members of the Ohio Mail-In Rebate Class.

273.     Upon information and belief, and given the fact that Menards offered, implemented and/or managed the Menards rebate program, Menards knew or should have known that it deceptively and unfairly advertised the Menards rebate program to consumers, and misrepresented the amount of the rebate checks mailed to customers.

274.     Specifically, Menards promised consumers, through its "11% Off Everything" rebate promotion, that if they purchased any product at Menards during the promotion and timely sent in a completed rebate form, they would receive a rebate check amounting to 11% of the value of their purchase within six to eight weeks.

275.     Despite those promises, Menards did not provide a full rebate check to the Ohio Mail-In Rebate Class and minimized its rebate obligations.

276.     Menards also sent Plaintiffs' rebate checks far outside the six to eight week processing period, if it sent the checks at all.

277.     Defendant represented to consumers that the "after mail-in rebate" prices listed in store could feasibly be obtained by the average consumer following the prescribed rebate process.

278.     In conjunction with the violations of CSPA, set forth above, Defendant violated § 4165.02 (11) of the Uniform Deceptive Trade Practices Act ("DTPA") which proscribes "advertis[ing] goods or services with intent not to sell them as advertised."

279.     As a direct and proximate cause of Menards' deceptive and unfair trade practices, Plaintiffs and the Ohio Mail-In Rebate Class suffered actual damages, including monetary losses for the amount of the rebate check they should have (but did not) received, as well as monetary losses for

the purchase price of the product altogether (as they would have chosen not to purchase the product or to purchase it elsewhere).

280.  Menards' failure to fully and timely fulfill its rebate obligations to Plaintiffs and the Ohio Mail-In Rebate Class members was unfair, deceptive, and misleading.

281.  Menards' conduct is in violation of the CSPA and Plaintiffs and the members of the Ohio Mail-In Rebate Class are thus entitled to damages totaling twice the amount of pecuniary loss, costs, reasonable attorney's fees, injunctive relief prohibiting Defendant's unfair and deceptive advertising going forward, and any other penalties or awards that may be appropriate under applicable law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Classes, respectfully requests that this Court enter an order:

- Certifying this case as a class action on behalf of the Classes defined above, appointing Plaintiffs as class representatives and appointing their counsel as class counsel;

- Declaring that Defendant's actions, as set out above, constitute (i) violations of the consumer protection laws stated above, (ii) breach of contract, (iii) breach of the implied covenant of good faith and fair dealing, and (iv) unjust enrichment (in the alternative to breach of contract);

- Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes, including, *inter alia,* an order prohibiting Menards from engaging in the wrongful and unlawful acts described herein;

- Awarding damages to Plaintiffs and the Classes in an amount to be determined at trial, or, in the alternative, awarding restitution to Plaintiffs and the Classes in an amount to be determined at trial, and requiring Menards to disgorge all amounts by it was unjustly enriched;

- Awarding Plaintiffs and the Classes their reasonable litigation expenses and attorneys' fees;

- Awarding Plaintiffs and the Classes pre- and post-judgment interest, to the extent allowable; and

- Awarding such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiffs demand a trial by jury for all issues so triable.


Respectfully submitted,


__/s/Eric J. Haag_____
Eric J. Haag
Atterbury, Kammer & Haag, S.C.
8500 Greenway Blvd., Suite 103
Middleton, WI 53562
Telephone:(608) 821-4600
Fax:(608)821-4610
E-mail: ehaag@wiscinjurylawyers.com


Sabita J. Soneji
V Chai Oliver Prentice
Tycko & Zavareei LLP
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
E-mail: ssoneji@tzlegal.com

*Attorneys for Plaintiffs, individually
and on behalf of a class of similarly
situated individuals*