## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AMY CHILDERS, BARRY EARLS, THOMAS FETSCH, CODY ITALIA, DAVID KIEL, NAZAR MANSOOR, DEBBIE RIDER, TRENT SHORES, STEVE SCHUSSLER, CASSIE LIETAERT, RYAN INGALLS, CHRIS JESSIE and KAREN FLECKENSTEIN, individually and, on behalf of a class of similarly situated individuals,<br><br>        Plaintiffs,<br><br>                v.<br><br>MENARD, INC., a Delaware [sic] corporation, and JOHN DOES 1-10,<br><br>        Defendants. | Case No. 20 CV 107<br><br><br><br><br><br>Hon. James D. Peterson |

## MEMORANDUM OF LAW IN SUPPORT OF
## MENARD, INC.'S PETITION TO COMPEL ARBITRATION

When plaintiffs Amy Childers, Cody Italia, Nazar Mansoor, Debbie Rider, Ryan Ingalls and Karen Fleckenstein obtained, completed and mailed in rebate forms to Menard, Inc.[1] ("Menards"), each of them agreed that all disputes between them and Menards arising out of or relating to Menards' rebate program would be subject to binding arbitration. Despite that agreement, which is disclosed in the very rebate form appearing in the Complaint, these "Arbitration Plaintiffs" have filed this lawsuit asserting various claims against Menards arising out of those programs. These plaintiffs should be compelled to arbitrate their claims against Menards, and the Court should stay this lawsuit with respect to them.

---

[1] The Complaint erroneously alleges that Menard, Inc. is a Delaware corporation. (Compl. ¶ 25.) Menard, Inc. is a Wisconsin corporation.

## BACKGROUND

The facts supporting this petition are basic and, for the most part, come straight from plaintiffs' own allegations.

### A.     Plaintiffs' Claims

As the complaint establishes, plaintiffs' claims involve Menards' mail-in rebate programs.  (Compl. ¶¶ 30-54.)  While there are a number of rebate promotions Menards holds, plaintiffs all allege that they participated in the 11% rebate program and plaintiffs detail the general rebate process in the complaint:

- First, the customer purchases products subject to a rebate and receives a "rebate receipt" from the cashier along with his or her purchase receipt.  (*Id.* at ¶ 39.)

- Second, the customer obtains the appropriate rebate form (which plaintiffs call a "redemption ticket") corresponding to the rebate.  (*Id.* at ¶ 40.)

- Third, the customer fills out the rebate form and mails it and the rebate receipt to Rebates International in Wisconsin.  (*Id.* at ¶¶ 41-42.)

- Fourth, the customer receives the rebate by mail, which is in the form of a merchandise credit to be used to purchase products from Menards.  (*Id.* at ¶ 45.)

Plaintiffs allege that they "purchased Menards' items to which the rebate applied, timely submitted paperwork for the advertised rebate, but never received the rebate at all of in the appropriate amount."  (*Id.* at p. 1-2.)  Plaintiffs allege that by filling in and submitting the rebate forms, they entered into "specific agreements with Menards" that Menards breached by not sending rebates.  (*Id.* at ¶ 182.)

Based on these and other allegations, plaintiffs assert claims against Menards for (i) breach of contract (Count I); (ii) breach of the implied covenant of good faith and fair dealing (Count II), (iii) unjust enrichment (Count III); and (iv) violations of the consumer protection statutes of their respective states (Counts IV-IX).

**B.      The Arbitration Agreement**

The Menards rebate form that the Arbitration Plaintiffs completed contained an agreement to resolve any claims relating to a purchaser's rebate through binding arbitration.[2] Specifically, the form provides as follows:

> Menards will not sell or distribute any of your information to any other organizations. All of your information is strictly used for Menards purposes. By submitting the rebate form, you agree to resolve any disputes related to rebate redemption by binding arbitration and you waive any right to file or participate in a class action. Terms and conditions available at www.rebateinternational.com.

(*Id.*) A copy of the rebate form with the arbitration agreement is set forth in paragraph 41 of the Complaint. (Compl. ¶ 41.)

In addition, the Terms and Conditions at www.rebateinternational.com provide as follows:

> Purchaser AGREES that ANY and ALL controversies or claims arising out of or relating to Menards® Rebate Program(s), or the breach thereof, MUST be submitted to binding arbitration administered by the American Arbitration Association (AAA) under its applicable Consumer or Commercial Arbitration Rules. Purchaser and Menards® AGREE that all claims may only be brought in Purchaser or Menards® individual capacity and not as a plaintiff or class member in any purported class or representative proceeding. Unless Purchaser and Menards® agree otherwise, the arbitrator may not consolidate more than one purchaser's claim, and may not otherwise preside over any form of a representative or class proceeding. The Arbitrator appointed by the AAA will have the exclusive authority to resolve any challenge or dispute relating to the interpretation, applicability, enforceability, or formation of the Purchaser and Menards® arbitration agreement. All claims MUST be brought within ONE YEAR of the purchase date. Menards® is engaged in interstate commerce and this arbitration provision is subject to the Federal Arbitration Act, 9 U.S.C. Sections 1-14 as amended from time to time.
>
> **The remedy for any claim is limited to actual damages, and in no event will any party be entitled to recover punitive, exemplary, consequential or**

---

[2] Beginning December 3, 2017, Menards rebate forms included an agreement to arbitrate all disputes. (Every Decl. ¶ 8.) The Arbitration Plaintiffs each allege that they entered into agreements with Menards to obtain rebate redemptions after this date. The remaining plaintiffs – Earl, Fetsch, Kiel, Shores, Schussler, Lietaert and Jesse – allege that they entered into agreements with Menards to obtain rebates prior to December 3, 2017. Menards is not moving to compel arbitration with respect to these plaintiffs.

- 3 -

**incidental damages or have damages multiplied or otherwise increased, including attorneys' fees or other such related costs of bringing a claim, or to rescind this agreement or seek injunctive or any other equitable relief**.

www.rebateinternational.com/RebateInternational/termsAndConditions.do        (emphasis        in

original).   These terms and conditions have been available on the website since December 20, 2017.  (Every Decl. ¶ 9.)

### C.    The Arbitration Plaintiffs' Agreements to Arbitrate

Although they have not attached copies of relevant documents to their complaint, each of the Arbitration Plaintiffs alleges that he or she (i) purchased products during an 11% rebate promotion after December 3, 2017, (ii) obtained the Menards rebate form, and (iii) completed the form as instructed and mailed it to Menards.  (Compl. ¶¶ 60-63, 96-99, 121-24, 130-34, 150-53, 158-61.)

Childers alleges that she is a Wisconsin resident and that she purchased $1,327.56 in products via Menards' website in or about October 2018 during an 11% off everything rebate promotion.  (*Id*. at ¶¶ 158-59.)  Childers alleges that she downloaded the rebate form, mailed it along with the receipt within one week and checked on the status of her rebate by accessing the Rebates International rebate tracker available at www.rebateinternational.com.  (*Id*. at ¶¶ 160-61.)  Childers alleges that she did not find her rebate processed in the system, and that Rebates International later sent an email telling her that the items she purchased were already on sale and did not qualify for a rebate.  (*Id*. at ¶¶ 163-64.)

Italia alleges that he is a Missouri resident and that he purchased $21.99 in products from a Menards store in Missouri on or about February 2, 2019 during a Menards 11% off everything rebate promotion.  (*Id*. at ¶¶ 130-32.)  Italia alleges that he mailed the rebate form the same day, and that he also later checked on the status of his rebate on-line, but did not see it.  (*Id*. at ¶¶ 133-

34.)  Italia alleges that he called Menards but did not receive an explanation or rebate.  (*Id*. at
¶¶ 135-36.)

Mansoor, a Michigan resident, is similar.  He alleges that he purchased $380.00 in
products from a Menards store in Michigan between May and June 2018 during Menards 11%
off everything rebate promotions.  (*Id*. at ¶¶ 121-22.)  Mansoor alleges that within two or three
days of his purchases he mailed rebate forms to Menards and that he inquired about his rebate at
the Menards store on several occasions.  (*Id*. at ¶¶ 123-24.)  Mansoor alleges that he also
contacted Rebates International in late 2018, but that he received no response and has not
received a rebate check.  (*Id*. at ¶¶ 124-27.)

Rider alleges that she is an Illinois resident who purchased $878.77 in products from a
Menards store in Illinois in or about March 2018, during a Menards 11% off everything rebate
promotion.  (*Id*. at ¶¶ 60-62.)  Rider alleges that she mailed the rebate form and receipts to
Menards shortly thereafter, and also checked on the status of her rebate on-line.  (*Id*. at ¶¶ 63-
64.)  Rider alleges that she did not see a rebate on the system, and that she called Rebates
International and was told that they did receive the rebate form or the receipts.  (*Id*. at ¶¶ 64-65.)
Rider alleges that she has not received the rebate.  (*Id*. at ¶ 65.)

Ingalls alleges that he is a Michigan resident who purchased $177.41 in products from a
Menards store in Michigan in or about January 2019 during a Menards 11% off everything
rebate promotion.  (*Id*. at ¶¶ 96-97.)  Ingalls alleges that he mailed the rebate form to Menards
within one week of his purchases, and that he checked on the status of his rebate on-line, but did
not see a rebate for that purchase.  (*Id*. at ¶¶ 99-101.)  Ingalls alleges that he has not received the
rebate.  (*Id*. at ¶ 104.)

Finally, Fleckenstein alleges that she is an Ohio resident and that she purchased $33.47 in
products from a Menards store in Ohio in or about July 2019 during a Menards 11% off

everything rebate promotion.  (*Id*. at ¶¶ 150-51.)  Fleckenstein alleges that she mailed the rebate to Menards within one week.  (*Id*. at ¶ 153.)  Fleckenstein alleges that she checked on the status of her rebate on-line, but did not see a rebate.  (*Id*. at ¶ 154.)  Fleckenstein alleges that she has not received the rebate.  (*Id*. at ¶ 155.)

Despite their agreements to arbitrate, on February 6, 2020, the Arbitration Plaintiffs, along with plaintiffs Earl, Fetsch, Kiel, Shores, Schussler, Lietaert and Jesse filed this action against Menards (and John Does 1-10).

## ARGUMENT

Under Section 2 of the Federal Arbitration Act, 9 U.S.C. § 1, et seq., written agreements to arbitrate in contracts involving commerce are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  As the Supreme Court has held, this provision "reflect[s] both a liberal policy favoring arbitration[] and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC. v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).  Following these principles, "courts must place arbitration agreements on an equal footing with other contracts[] and enforce them according to their terms."  *Id.*

## I.  THE ARBITRATION PLAINTIFFS SHOULD BE COMPELLED TO ARBITRATE THEIR CLAIMS AGAINST MENARDS

As explained above, each of the Arbitration Plaintiffs has a written agreement with Menards to arbitrate all claims arising out of or relating to Menards' rebate programs.  Those plaintiffs, however, have refused to comply by instead filing claims in this action against Menards based on their alleged rebates.  Section 4 of the FAA provides that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the

controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U. S. C. § 4.  The Section further provides that:

The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

*Id*.

Pursuant to Section 4, this Court should compel the Arbitration Plaintiffs to arbitrate their claims against Menards.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).  Plaintiffs themselves allege the facts establishing the making of their agreements for arbitration, and this lawsuit is evidence that plaintiffs have failed to comply with those agreements.  Accordingly, and order to compel arbitration is warranted.

## II.    THIS LAWSUIT SHOULD BE STAYED AS TO THE ARBITRATION PLAINTIFFS

Section 3 of the FAA provides that:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U. S. C. § 3.  Applying this provision, the Court should stay all proceedings in this lawsuit involving the Arbitration Plaintiffs.

As both the Supreme Court and Seventh Circuit have held, Section 3's stay provision is mandatory.  *See Volkswagen Of America, Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a § 3 stay is mandatory.") citing *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220 (1987).  Although the Arbitration Plaintiffs assert various claims against Menards, their allegations establish that all of those claims are based on or arise out of Menards' rebate programs.  (*Id*. at ¶¶ 182, 188-89, 193, 203, 218, 233, 247, 261, 272.)  Absent a ruling by an arbitrator that any of the Arbitration Plaintiffs' claims are not arbitrable – which is an issue for an arbitrator to decide[3] – the Court should stay all proceedings in this lawsuit involving the Arbitration Plaintiffs.

---

[3] Under both the AAA Consumer and Commercial rules, the arbitrators have the power to rule on their own jurisdiction, including "any objections to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim of counterclaim."  *See* AAA Consumer Arbitration Rules, R-14 (available at https://adr.org/sites/default/files/Consumer_Rules_Web_0.pdf); AAA Commercial Arbitration Rules and Mediation Procedures, R-7 (available at https://adr.org/sites/default/files/Commercial%20Rules.pdf).  Thus, the question of the arbitrability of any particular issue or claim raised by the Arbitration Plaintiffs is for the arbitrator to decide.  *Henry Schein v. Archer and White Sales, Inc*., --- U.S. ---, 139 S.Ct. 524, 531 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.").

## <u>CONCLUSION</u>

For all of the foregoing reasons, Menards' petition to compel arbitration should be granted.  The Court should compel the Arbitration Plaintiffs to arbitrate their claims against Menards and should stay all proceedings in this lawsuit relating to the Arbitration Plaintiffs.

Dated: April 13, 2020                                    Respectfully submitted,

                                                         /s/ James J. Boland
                                                         Brian P. Norton
                                                         James J. Boland
                                                         Andrew C. Nordahl
                                                         Freeborn & Peters, LLP
                                                         311 South Wacker Drive, Suite 3000
                                                         Chicago, Illinois 60601-6677
                                                         Tel: (312) 360-6000
                                                         Fax: (312) 360-6520

                                                         *Attorneys for defendant Menard, Inc.*