## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AMY CHILDERS, BARRY EARLS, THOMAS FETSCH, CODY ITALIA, DAVID KIEL, NAZAR MANSOOR, DEBBIE RIDER, TRENT SHORES, STEVE SCHUSSLER, CASSIE LIETAERT, RYAN INGALLS, CHRIS JESSIE and KAREN FLECKENSTEIN, individually and, on behalf of a class of similarly situated individuals, | Case No. 20 CV 107 |
| | |
| | Hon. James D. Peterson |
| Plaintiffs, | |
| v. | |
| MENARD, INC., a Delaware corporation, and JOHN DOES 1-10, | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MENARD INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Menards[1] is a family-owned company operating home improvement stores across the Midwest.  Among its most popular promotions is its 11% rebate sale, which it has periodically run over the past decade.  During such sales, Menards offers customers an 11% rebate on the sale price of eligible items, before taxes, in the form of a merchandise credit check, which can be used on future in-store purchases at Menards.  To obtain the rebate, customers must (1) purchase items during an 11% rebate sale, at which time they will receive a rebate receipt or proof of purchase identifying the rebate amount, (2) fill out a rebate claim form with their name and address, and (3) mail the rebate claim form with the original rebate receipt to Menards.  In

---

[1] The Complaint erroneously alleges that Menard, Inc. is a Delaware corporation.  (Compl. ¶ 25.) Menard, Inc. is a Wisconsin corporation.

approximately six to eight weeks, they will receive their merchandise credit check from Menards.

Menards' 11% rebate sale is popular with customers because of the significant savings available to them.  From Menards' perspective, the sale encourages customers to return to Menards to redeem merchandise credit checks and make additional in-store purchases.  Menards has run its 11% rebate sale regularly since 2011 and has issued millions of merchandise credit checks.

Plaintiffs are residents of Illinois, Michigan, Missouri, North Dakota, Ohio, and Wisconsin, who allege nine causes of action against Menards arising out of its 11% rebate sale.  The centerpiece of each cause of action, regardless of legal theory, is that Menards breached the terms of the 11% rebate sale.

Plaintiffs allege that they fully understood the terms of Menards 11% rebate sale, made purchases during such sales, and submitted rebate forms, but never received their merchandise credit checks from Menards.  Based on these allegations, Plaintiffs claim that Menards breached its agreements with them (First Cause of Action), breached a duty of good faith and fair dealing (Second Cause of Action), was unjustly enriched (Third Cause of Action), and violated the consumer fraud/deceptive practice acts of each of their respective states (Fourth – Ninth Causes of Action).

The Court should dismiss Plaintiffs' claims for the following principal reasons[2]:

---

[2] As set forth in Menards' Petition to Compel Arbitration, since December 3, 2017, Menards 11% rebate sale program requires those who choose to participate in it to resolve any disputes related to the rebate redemption through binding arbitration.  The full terms and conditions, as referenced in the rebate form itself, can be found at www.rebateinternational.com.  Because the claims of Plaintiffs Rider, Mansoor, Childers, Ingalls, Italia and Fleckenstein arose out of sales occurring after December 3, 2017, these claims should be stayed pending arbitration.

- ***Breach of Contract***:  Plaintiffs admit that they fully understood the terms of the 11% rebate sale and that conditions precedent to Menards' performance included their submission of a completed rebate claim form ***and*** the original rebate receipt/proof of purchase.  Plaintiffs only allege, however, that they submitted the completed rebate claim form, not the original rebate receipt.  Therefore, Count I fails to state claim for breach of contract against Menards.  *See infra* at 9-11.  In addition, several Plaintiffs admit that Menards had not received or had no record of their submissions.  Menards cannot perform its end of the bargain if it does not get the completed rebate claim form and rebate receipt.  *See infra* at 11-13.

- ***Breach of the Duty of Good Faith and Fair Dealing***:  Under the state laws applicable to Plaintiffs' claims, there is no independent cause of action for breach of the duty of good faith and fair dealing.  *See infra* at 13-14.  In addition, there can be no breach of the duty of good faith and fair dealing where, as here, Plaintiffs were fully aware that the terms of the 11% rebate sale expressly permitted the action that they now contend is unfair.  *See infra* at 15.

- ***Unjust Enrichment***:  Because unjust enrichment is a quasi or implied contractual doctrine, it is settled law that it does not apply where the parties have entered into an express contract.  *See infra* at 15-16.  In addition, where plaintiffs assert a breach of contract claim and fail to allege facts to invalidate the contract on which the claim is based, plaintiffs are precluded from pleading an unjust enrichment claim in the alternative.  *See infra* at 16-17.

- ***Consumer Fraud***:  Plaintiffs' consumer fraud claims fail for three reasons.  First, these claims are based entirely on Menards' alleged breaches of the 11% rebate sale.  A breach of contract is not a deceptive practice and does not provide the basis for a consumer fraud claim.  *See infra* at 17-21.  Second, consumer fraud claims must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure, which Plaintiffs fail to do.  *See infra* at 21-22.  Third, Plaintiffs have not alleged that they relied on anything Menards said that was untrue, deceptive or misleading or suffered an ascertainable loss as a result. *See infra* at 22-24.

## **BACKGROUND**

### A.   **Menards and Its 11% Rebate Sales**

Menards is a family-owned Wisconsin company, headquartered in Eau Claire, which operates over 300 home improvement stores in 14 states across the Midwest.  (Compl. at ¶ 2.) Menards is regarded as the low-price leader in its industry, and takes great pride in its slogan "Save BIG Money®."  (*Id.* at ¶¶ 3, 31.)  Menards' customers are able to do so, not only through

Menards' everyday low prices and willingness to match its competition's prices, but also through regular sales and promotions.

Among these sales is Menards' popular 11% rebate sale (Compl. at ¶ 32), which it has run regularly, during designated one-week periods, since 2011.  As Plaintiffs acknowledge, the 11% rebate is a mail-in rebate, in the form of a merchandise credit on future in-store purchases, which a customer can obtain by complying with certain conditions.  (*Id.* at ¶ 37-42, 45.)

*First*, the customer must make a purchase during an 11% rebate sale.  (Compl. at ¶ 39.) At that time, the customer will receive a "rebate receipt" or proof of purchase at the register, along with the usual sales receipt.  (*Id.* at ¶ 41.)  The rebate receipt sets out an "11% Rebate Amount" – equal to 11% of the sales price, before taxes, on eligible items – which a customer will obtain after following all the conditions of the 11% rebate program.  (*Id.*)

*Second*, a customer must fill in his/her name and address on a rebate claim form. (Compl. at ¶ 41.)  The form is the size of a postcard and is available in-store or on-line.  (*Id.*)

*Third*, the customer must provide the rebate claim form to Menards, along with the original rebate receipt/proof of purchase, by mailing it to "Save 11%, P.O. Box: 155, Elk Mound, WI 54739-0155."  (Compl. at ¶¶ 42, 44.)  The customer must do so no later than the date specified on the rebate receipt and/or the rebate instructions, which is generally between three and four weeks after the 11% rebate sale ends.[3]  (*Id.*)

Menards handles the processing of customer rebates through an internal group known as Rebates International, which acts as the clearinghouse for all its rebate programs.  (Compl. at ¶ 42.)  After Rebates International receives the rebate claim form and original rebate receipt, it

---

[3] So, for example, the rebate instructions set out in the complaint for the rebate sale running July 7 through July 13, 2019, required customers to have their envelope with the completed form and rebate receipt postmarked by no later than August 3, 2019.  (Compl. at ¶ 41.)  This date is also printed on the rebate receipt.

enters the customer information and rebate amount into its database.  (*Id*. at ¶ 49.)  Once entered, a customer can track his or her rebate on-line.  (*Id*.)  Usually, it takes six to eight weeks to process, after which Menards issues a merchandise credit to the customer in the rebate amount.  (*Id*. at ¶¶ 41, 44.)  The customer can then use the merchandise credit, which does not expire, to make in-store purchases at any time.  (*Id*. at ¶ 45.)

Menards' 11% rebate sale is popular because of the significant cost savings to customers.  Menards offers, advertises, and supports its 11% rebate sales program because it wants customers to return to its stores to make additional purchases with the merchandise credits.

This said, not all customers who purchase products during an 11% rebate sale choose to participate in the program and do not submit the rebate claim form and original rebate receipt.  In addition, Menards never receives some rebate claim forms and rebate receipts from customers (*see* Compl. at ¶¶ 50, 65, 77, 118, 147, 172), because they are not properly or legibly addressed, have inadequate or no postage, have no return address, or for other reasons are never received by Menards.  (*See e.g.*, Compl. at ¶ 41.)  Without a rebate form, Menards has no record that a customer has chosen to participate and no way of knowing the customer's identity.  Likewise, without a rebate receipt, Menards cannot verify the purchase or know the rebate amount for such check.

**B.**    **Plaintiffs' Claims**

Plaintiffs are residents of Illinois, Michigan, Missouri, North Dakota, Ohio and Wisconsin (Compl. at ¶¶ 12-24), who assert nine causes of action against Menards arising out of its 11% rebate sales (*id*. at ¶¶ 181-281).  Plaintiffs do not contend that they were confused, misled or deceived by the terms of Menards 11% rebate sale.  To the contrary, Plaintiffs allege that they were aware that Menards 11% rebate was a mail-in rebate, returned to them in the form

of a merchandise credit on future purchases.   (Compl. at ¶¶ 37-42, 45.)   Plaintiffs also understood that to obtain the merchandise credit they had to purchase items during an 11% rebate sale and provide Menards with a completed rebate claim form and an original rebate receipt.   (*Id*.)   Plaintiffs allege that they purchased Menards' products to which the rebate applied, timely submitted paperwork for the advertised rebate, but never received the merchandise credit at all or in the appropriate amount.   (*Id*. at p. 1.)

More specifically, Plaintiffs allege that they purchased products from Menards in the following amounts, at the times and locations indicated:

| Plaintiff | State | Purchase Date(s) | Purchase Amount | Rebate Claimed |
|---|---|---|---|---|
| Fetsch, Thomas | North Dakota | Feb-July 2016 | $1,430 | $157.31 |
| Earls, Barry | Michigan | June 17, 2017 | $6,959.60 | $756.56 |
| Kiel, David | Michigan | July 2017 | $2,816.00 | $256.00 |
| Shores, Trent | Illinois | July 12, 2017 | $3,850.75 | $500.58 |
| Jesse, Chris | Wisconsin | Aug. 23, 2017 | $2,825.35 | $310.00 |
| Lietaert, Cassie | Michigan | Sept. 2017 | $956.71 | $105.23 |
| Schussler, Steve | Illinois | Sept. 9, 2017 | $3,429.09 | $377.20 |
| Shores, Trent | Illinois | Nov. 2017 | $700.00 | n/a |
| Rider, Debbie | Illinois | Mar. 2018 | $878.77 | $96.66 |
| Mansoor, Nazar | Michigan | July 2018 | $380.00 | $98.00 |
| Childers, Amy | Wisconsin | Oct. 2018 | $1,327.56 | $146.03 |
| Ingalls, Ryan | Michigan | Jan. 2019 | $177.41 | $19.50 |
| Italia, Cody | Missouri | Feb. 2, 2019 | $21.99 | $2.42 |
| Fleckenstein, Karen | Ohio | July 2019 | $33.47 | $3.68 |

(Compl. at ¶¶ 60-173.)

Plaintiffs contend that "[b]y filling in and submitting their redemption tickets to redeem their 11% rebate for their purchases at Menard stores, Plaintiffs . . . entered into specific agreements with Menards."   (Compl. at ¶ 182.)   Plaintiffs conclude that by doing so they complied with all conditions precedent to Menards' performance (*id*. at ¶¶ 183-84), and Menards "materially breached" their respective contracts by failing to issue merchandise credit checks to them.   (*Id*. at ¶ 185.)

Despite these allegations, with only two exceptions (Compl. at ¶¶ 63, 161), none of the Plaintiffs allege that they included their original rebate receipts with their submission (*id*. at ¶¶ 70, 76, 81, 89, 99, 109, 116, 124, 134, 145, 153), even though they concede this was required by the terms of Menards' 11% rebate sale (*id*. at ¶¶ 42, 44).  In addition, while Plaintiffs specifically recognize that Menards' rebate instructions disclaim liability for lost or misdirected mail due to inadequate postage or print clarity (*id*. at ¶ 41), many of Plaintiffs acknowledge that when they contacted Menards they learned that Menards had not received their rebate submissions.  (*Id*. at ¶¶ 50, 65, 77, 118, 147, 172.)  In general, these Plaintiffs do not allege that they tried to resubmit the rebate form and rebate receipt or otherwise follow-up with Menards.  (*Id*.)

Nevertheless, Plaintiffs assert the following causes of action against Menards:  (1) breach of contract (First Cause of Action) (Compl. at ¶¶ 181-86), (2) breach of the implied covenant of good faith and fair dealing (Second Cause of Action) (*id*. at ¶¶ 187-91), (3) unjust enrichment (Third Cause of Action) (*id*. at ¶¶ 192-197), and (4) violations of state deceptive trade practices statutes (Fourth – Ninth Causes of Action) (*id*. at ¶¶ 198-281).

## ARGUMENT

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct 1955 (2007), the Supreme Court held that in order to survive a motion to dismiss, a plaintiff must allege *facts* that, if true, are ***"sufficient to make the claim of unlawful conduct" – that the plaintiffs is "entitled to relief" – "plausible."*** (emphasis added). "Given the potential for abuse," the Court held that "'basic deficienc[ies] should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'"  *Twombly,* 550 U.S. at 558.  That point is at the pleadings stage.

To state a plausible claim, it is not enough for plaintiffs to rely on labels, formulaic recitations of the elements of a cause of action, or conclusions of law couched as factual allegations. *Twombly*, 550 U.S. at 545; *Papasan v. Allain,* 478 U.S. 265, 286, 106 S. Ct. 2932 (1986); *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) ("We accept all well-pleaded allegations of fact as true and draw all reasonable inferences in the plaintiffs' favor. Legal conclusions do not get the same benefit; those we may disregard"); *Toulon v. Cont'l Cas. Co.,* 877 F.3d 725, 734 (7th Cir. 2017).

In this case, despite its length, Plaintiffs' complaint is long on legal conclusions but woefully short on factual allegations that plausibly suggest that Menards breached any contracts or otherwise violated the law.

I. **Plaintiffs' Claims For Breach of Contract Fail Because Plaintiffs Did Not Satisfy the Conditions Precedent to Menards' Performance.**

A. **The Law of Each State Where Plaintiffs Made Their Purchases Governs Their Respective Breach of Contract Claims.**

A federal court sitting in diversity applies the choice of law rules of the forum state in deciding which state's substantive law governs the claims. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (U.S. 1941); *CSX Transp., Inc. v. Chicago and N. W. Transp. Co.*, 62 F.3d 185, 188 (7th Cir. 1995). For contract disputes, Wisconsin has adopted the "significant relationship" test, also known as the "grouping of contacts" test. *State Farm Mut. Auto. Ins. Co. v. Gillette,* 2002 WI 31, ¶ 26, 251 Wis. 2d 561, 641 N.W.2d 662; *Urhammer v. Olson*, 159 N.W.2d 688, 689 (Wis. 1968); *Am. Family Mut. Ins. Co. v. Powell*, 169 Wis. 2d 605, 609, 486 N.W.2d 537, 538 (Wis. Ct. App. 1992).

Under this test, the law of the state with the most significant qualitative and quantitative contacts with the contract applies. *Urhammer*, 39 Wis. 2d at 450; *Barden v. Hurd Millwork Co.*,

249 F.R.D. 316, 320 (E.D. Wis. 2008); *Edgewood Manor Apt. Homes LLC v. RSUI Indem. Co.,* 782 F. Supp. 2d 716, 726–27 (E.D. Wis. 2011) ("In contract cases, Wisconsin choice of law principles point toward the law of the state with which the contract has the most significant relationship, also known as the 'grouping-of-contacts approach'.")  In making this determination, the court evaluates and weighs the significance of five factors: "(1) the place of contracting; (2) the place of negotiating the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, place of business and place of incorporation of the parties.  *Barden*, 249 F.R.D. at 320; *Haines v. Mid–Century Ins. Co.,* 47 Wis. 2d 442, 446-47, 177 N.W.2d 328, 330 (1970); *Hystro Prods., Inc. v. MNP Corp.,* 18 F.3d 1384, 1387 (7th Cir.1994).

In this case, the place of contracting, the place of negotiation, the place of performance, and the location of the subject matter of the contract are Plaintiffs' respective states of residence. These are Illinois, Michigan, Missouri, North Dakota, Ohio and Wisconsin, in which Plaintiffs purchased goods from Menard stores (or in one case on-line).  (Compl. at ¶¶ 12-24, 60-173.) Plaintiffs claim that they did so during different 11% rebate sales, which Menards advertised, offered and conducted in such states.  (*Id*.)  Plaintiffs further allege that they chose to participate in Menards' 11% rebate program from their respective states of residence when they completed the rebate claim form and mailed it to Menards with the original rebate receipt.  (*Id*.)  Within 6 to 8 weeks, Plaintiffs expected to receive, in their home state, a merchandise credit from Menards good on future purchases at Menards' stores.

Under these facts, Plaintiffs' breach of contract claims are governed by the laws of the states in which they reside and made their purchases.  *Barden*, 249 F.R.D. at 320.

### B.   Plaintiffs Have Not Satisfied the Conditions Precedent to Menards' Performance.

While contract law may vary from state to state, the states at issue here all recognize one settled principle – where a contract requires a plaintiff to satisfy a condition precedent, the defendant is not obligated to perform until that condition is satisfied.[4]  Here, Plaintiffs concede that they had "obligations" they had to perform *before* Menards was required to issue merchandise credit checks to them for their 11% rebates.  (Compl. at ¶ 184.)  In particular, Plaintiffs admit that once they made their purchases from Menards during an 11% rebate sale, they were required to submit (1) a completed rebate claim form, *and* (2) an original rebate receipt, *before* Menards was obligated to provide them with a merchandise credit check.  (*Id.* at ¶¶ 42, 44.)

Plaintiffs do not challenge these terms and, as the Federal Trade Commission has explained, retailers typically require such documentation before issuing a mail-in rebate:

---

[4] *See Price v. Ross*, 45 Wis. 2d 301, 306, 172 N.W.2d 633, 635 (Wis. 1969) (holding that a "'[c]ondition precedent' is one calling for performance of some act after the contract is entered into on performance of which the obligations depend" and holding that failure to allege compliance with a condition precedent makes the complaint deficient); *Able Demolition v. Pontiac*, 739 N.W.2d 696, 700 (Mich. Ct. App 2007) (holding that "[a] condition precedent is a fact or event that the parties intend must take place before there is a right to performance.  Failure to satisfy a condition precedent prevents a cause of action for failure of performance"); *Sabatine BK Dev., LLC v. Fitzpatrick Enter., Inc.*, 2017-Ohio-805, 85 N.E. 3d 1127, at ¶ 30 (holding that "[w]here a condition precedent does not occur, a party is excused from performing the duty promised under the contract"); *Kern v. Clear Creek Oil Co.*, 149 Ohio App. 3d 560, 2002-Ohio-5438, 778 N.E.2d 115, at ¶ 21 (holding that defendant was not required to perform because plaintiff failed to meet a condition precedent); *Lehning v. Gates*, 809 S.W.2d 886, 887 (Mo. Ct. App. 1991) ("Having failed to plead and prove that they performed the conditions precedent imposed upon them, the [plaintiffs] did not show facts which would entitle them to recover"); *Kilianek v. Kim*, 192 Ill. App. 3d 139, 142, 548 N.E.2d 598, 600 (Ill. App. Ct. 1989) (holding that defendant was relieved of performing where plaintiff failed to perform condition precedent); *Kruger v. Soreide*, 246 N.W.2d 764, 769 (N.D. 1976) ("Where, as here, obtaining financing is made a condition precedent to a binding contract, there is no enforceable contract until financing is obtained"); N.D. Cent. Code § 9-01-11 ("A condition precedent is a condition which is to be performed before some right dependent thereon accrues or some act dependent thereon is performed").

But most rebates are of the mail-in variety. They require consumers to pay the full cost of an item at the time purchase, then to send documentation to the manufacturer or retailer to receive a rebate by mail.

The documentation required generally includes the original sales receipt, UPC code, rebate slip, and the customer's name, address and telephone number. In most cases, this paperwork must be sent to the manufacturer or retailer within 30 days of the purchase. Consumers generally receive their rebates up to 12 weeks later.

https://www.consumer.ftc.gov/articles/0096-rebates (last visited April 13, 2020).[5]

In this case**,** while Plaintiffs generally aver that they have performed all conditions precedent to Menards' performance (*see* Compl. at ¶ 184), their factual allegations belie this legal conclusion.  Plaintiffs admit that one of these conditions was sending Menards the original rebate receipt as proof of purchase.  (*Id*. at ¶¶ 42, 44.)  However, no Plaintiff with non-arbitrable claims alleges the he or she did so.  Earls, Fetsch, Fleckenstein, Ingalls, Italia, Jesse, Kiel, Lietaert, Mansoor, Schussler, and Shores only allege that they filled out and sent the rebate claim form to Menards.  (*Id*. at ¶¶ 70, 76, 81, 89, 99, 109, 116, 124, 134, 145, 153, 171.)  None of these Plaintiffs allege that they submitted the original rebate receipt to Menards.[6]  (*Id*.)

Thus, based on their own allegations, not one Plaintiff, with non-arbitrable claims, has satisfied his/her "obligation" under the 11% rebate sale to submit the original rebate receipt.  As a result, none of these Plaintiffs have stated a breach of contract claim against Menards.

---

[5] The FTC further advises consumers to "[m]ake a copy of all paperwork to be mailed when applying for a rebate. It's the only record a consumer will have of the transaction if anything goes wrong."  *Id*.

[6] It is not as if Plaintiffs are unaware of this contractual condition, Childers and Rider, whose claims are subject to arbitration, both specifically allege that they submitted the rebate form ***and*** the rebate receipt "as instructed by Menards."  (Compl. at ¶¶ 63, 161.)

C.     **Menards Cannot Perform If It Did Not Receive the Completed Rebate Forms and Receipts From Plaintiffs.**

The law has long recognized that a party is excused from performing its obligations under a contract where such performance is impossible or impracticable.  The Restatement describes the doctrine as follows:

> Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 261 (Oct. 2019 Update).[7]

In this case, the basic assumption underlying Menards' performance was that it would receive the completed rebate claim forms and original rebate receipts,[8] which identify the customer by name and address.  Without these submissions, Menards has no record that a customer is seeking to obtain the 11% mail-in rebate or the amount of the rebate.  It is axiomatic that Menards cannot breach a contract by failing to send a merchandise credit if it never received the information necessary to do so.

There are, of course, a variety of reasons beyond Menards' control why it might not receive the rebate form and receipt.  Customers, for example, are responsible for properly

---

[7]  Each of the individual jurisdictions at issue here recognizes the common law impossibility/impracticability doctrine.  *See Bissell v. L.W. Edison Co.*, 9 Mich. App. 276, 285, 156 N.W.2d 623, 626 (1967); *Howard v. Nicholson*, 556 S.W.2d 477, 481 (Mo. Ct. App. 1977); *Austin Square, Inc. v. City Prods. Corp.*, 24 Ohio App. 2d 158, 160, 265 N.E.2d 322, 323 (1970); *YPI 180 N. LaSalle Owner, LLC v. 180 N. LaSalle II, LLC*, 403 Ill. App. 3d 1, 6, 933 N.E.2d 860, 864-65 (2010); *Red River Wings, Inc. v. Hoot, Inc.*, 2008 ND 117, ¶ 56, 751 N.W.2d 206; *In re Estate of Sheppard*, 2010 WI App 105, ¶¶ 12-13, 328 Wis. 2d 533, 789 N.W.2d 616.

[8] In their class allegations, Plaintiffs concede this.  Plaintiffs identify seven different classes, which share one feature in common.  Each class, regardless of purported geographic scope, is limited to customers "who have a processed rebate registered in Rebates International rebate tracker but who did not receive the full 11% rebate which was promised under Menards' 11% Off Everything promotion."  (Compl. at ¶ 174.)

addressing the envelopes and paying postage.  (Compl. at ¶ 42.)  Obviously, this does not always occur.  The instructions also provide that Menards is "not responsible for lost or misdirected mail due to lack of print clarity," because this too prevents delivery.  (*Id*. at ¶ 41.)   And, sometimes mail is undeliverable for other reasons.  Regardless, without the completed rebate form and receipt, Menards cannot perform its end of the bargain, because it is unaware that the customer is applying for a rebate.

In this case, the complaint indicates that Menards simply did not receive several of Plaintiffs' submissions.  Shores, Ingalls, Lietaert, Italia, Fetsch, and Fleckenstein all allege that they bought products from Menards during an 11% rebate sale and mailed the completed rebate form, albeit without the rebate receipt.  *See supra* at 6-7.  Later, when these Plaintiffs could not find their rebate on the on-line tracking system, they contacted Menards and learned that it had no record of the rebate submissions; Menards had not received their rebate claim forms and original rebate receipts.  (Compl. at ¶¶ 50, 65, 77, 101, 118, 135, 147, 154, 172.)

None of these Plaintiffs allege that they tried to resubmit their forms or otherwise provide Menards with copies or other information to obtain the merchandise credit check.  In addition, Plaintiffs do not contend that Menards was lying, or that it intentionally ignored or destroyed Plaintiffs' rebate submissions, refused to register or post them, or caused them to get lost or misdirected in the mail, which would be implausible.[9]

---

[9] Menards has no interest in sabotaging its own sales program by "systematically" refusing to provide the merchandise credit that encourages customers to return to its stores.  As Plaintiffs acknowledge, Menards' 11% rebate sale is a "prominent component" of Menards' advertising and marketing efforts.  (Compl. at ¶ 4.)  Menards provides the rebate in the form of a merchandise credit (Compl. at ¶ 45) precisely because it wants to encourage customers to return to Menards stores to use the merchandise credit and make additional purchases.  This is why it has issued millions of merchandise credits since 2011.  It would make no sense for Menards to prevent customers from obtaining merchandise credits for use on future in-store purchases.

Under these circumstances, Menards cannot be liable for breach of contract because, without the forms and receipts, it is impossible for Menards' to perform its obligations.

## II. Plaintiffs Fail to State a Cognizable Claim For Breach of the Implied Covenant of Good Faith And Fair Dealing.

There are two basic reasons why the Court should dismiss Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, which like Plaintiffs' breach of contract claim is governed by the law of the states where Plaintiffs reside and entered into their sales contracts with Menards. *See supra* at 8-9.

First, while these states recognize that contracts imply a duty of good faith and fair dealing[10], they do not recognize an independent cause of action for breach of this duty. *See McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013) (applying Illinois law); *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St. 3d 453, 2018-Ohio-15, 97 N.E.3d 458, at ¶ 44; *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965-66 (7th Cir. 2000) (applying Wisconsin law); *Cavendish*, 2010 ND 236, ¶ 8; *Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 476, 666 N.W.2d 271, 279-80 (2003); *Steven T. Huff LLC v. Monarch Cement Co.*, 2017 WL 10506793, at *4 (W.D. Mo. June 19, 2017).

Under these states' laws, the duty of good faith is not a "stand-alone obligation" that exists independently of the parties' contractual obligations. *In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006); *Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992). Rather, it is a duty of the contract itself and a breach of that duty is the same as a breach of any other contract term:

---

[10] *See Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶ 27, 348 Wis. 2d 360, 842 N.W.2d 240; *Hammond v United of Oakland, Inc.*, 193 Mich. App 146, 151-152; 483 N.W.2d 652, 655 (1992); *Kipnis v. Mandel Metals., Inc.*, 318 Ill. App. 3d 498, 506, 741 N.E.2d 1033, 1038 (1st Dist. 2000); *Koger v. Hartford Life Ins. Co.*, 28 S.W.3d 405, 412 (Mo. Ct. App. 2000); *Ed Schory & Sons, Inc. v. Soc. Nat'l Bank*, 75 Ohio St. 3d 433, 443, 1996-Ohio-194, 662 N.E.2d 1074; *Cavendish Farms, Inc. v. Mathiason Farms, Inc.*, 2010 ND 236, ¶ 8, 792 N.W.2d 500.

It is well-settled that Wisconsin law recognizes the implied contractual duty of good faith and fair dealing in commercial contracts. However, the implied covenant does not support an independent cause of action for failure to act in good faith under a contract. Instead, the duty of good faith is meant to give the parties what they would have stipulated for at the time of contracting if they could have foreseen all future problems of performance. As the district court pointed out, the requirement of good faith "was not of a duty independent of the contract, but of the contract itself." Because a breach of the duty of good faith is the same as a breach of any other contract term, Home Valu is entitled to its contractual liquidated damages, but nothing more.

*Home Valu, Inc.*, 213 F.3d at 965-66 (internal citations and quotations omitted). For this reason alone, Plaintiffs' breach of the duty of good faith and fair dealing claim fails.

Second, the Court should dismiss the claim because there can be no breach of the duty of good faith and fair dealing where the contract expressly permits the action which plaintiff contends is unfair. *Athletic Bus. Media, Inc. v. Nat'l Wood Flooring Ass'n*, 2016 WL 6078375, at *3 (W.D. Wis. Oct. 17, 2016); 23 Richard A. Lord, *Williston on Contracts* § 63:22 (4th ed. 2016) ("As a general principle, there can be no breach of the implied promise or covenant of good faith and fair dealing where the contract expressly permits the actions being challenged, and the defendant acts in accordance with the express terms of the contract"); *Lucarell,* 152 Ohio St. 3d, at ¶ 5.

In this case, Plaintiffs allege that "Menards acted unreasonably and evaded the spirit of the bargain, and thus breached the implied covenant of good faith and fair dealing, by failing to send the rebate checks at all or by failing to send the full amount promised to Plaintiffs." (Compl. at ¶ 190.) Yet, as explained above, Plaintiffs fully understood the terms of the 11% rebate sale, including that Menards had no obligation to send the merchandise credit if Plaintiffs did not comply with the conditions precedent. One of those conditions was sending the original rebate receipt to Menards, which Plaintiffs do not allege they did. *See supra* at 6-7. In addition, many of the Plaintiffs allege that Menards did not receive their rebate submissions at all. *See*

*supra* at 7.  As a matter of law, Menards did not violate its duty of good faith and fair dealing by acting in accordance with the terms of the 11% rebate sale.

### III.    Plaintiffs' Claims For Unjust Enrichment Fail Because That Implied Contract Theory Does Not Apply Where the Parties Have Entered Into an Express Contract.

As a purported "alternative" to their breach of contract claim, Plaintiffs attempt to assert a claim for unjust enrichment.  To state a claim for unjust enrichment, plaintiff must generally show "(1) a benefit conferred upon the defendant by the plaintiff, (2) knowledge or appreciation of the benefit by the defendant, and (3) acceptance and retention by the defendant of such benefit under such circumstances that it would be inequitable for him or her to retain it without paying the value thereof." *Ludyjan v. Cont'l Cas. Co.*, 2008 WI App 41, ¶ 7, 308 Wis. 2d 398, 747 N.W.2d 745.[11]

Unjust enrichment is a quasi or implied contractual doctrine, which does not apply where the parties have entered into an express contract.  *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011) (applying Wisconsin law); *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 658 (7th Cir. 2014) (applying Illinois law); *Belle Isle Grill Corp.*, 256 Mich. App. at 478, 666 N.W.2d at 280; *McCarthy v. Ameritech Publ'g, Inc.*, 763 F.3d 469, 487 (6th Cir. 2014) (applying Ohio law); *Northstar Founders, LLC v. Hayden Capital USA, LLC*, 2014 ND 200, ¶¶ 53-58, 855 N.W.2d 614, 633-34.

This is the case here.  Plaintiffs allege that they entered into "specific agreements" with Menards under which they are entitled to merchandise credits.  (Compl. at ¶ 182.)  As a result, they cannot pursue a claim for unjust enrichment.  *See Greenlee v. Rainbow Auction/Realty Co.*,

---

[11] The elements of a claim for unjust enrichment vary by jurisdiction, but for purposes of this motion it does not matter because Plaintiffs' claims fail at a more fundamental level.  A party cannot recover for unjust enrichment where, as here, there is an express contract.

202 Wis. 2d 653, 671, 553 N.W.2d 257, 265 (Ct. App. 1996); *Martin v. LG Elec. USA, Inc.*, 2015 WL 1486517, at *7 (W.D. Wis. Mar. 31, 2015).

In addition, while a plaintiff may plead breach of contract and unjust enrichment as alternative theories under Fed. R. Civ. P. 8(d), "where a plaintiff asserts a breach of contract claim and fails to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid, the plaintiff is precluded from pleading in the alternative claims that are legally incompatible with the contract claim." *Harley Marine Servs., Inc. v. Manitowoc Marine Grp., LLC*, 759 F. Supp. 2d 1059, 1062-63 (E.D. Wis. 2010); *see also Am. Casual Dining, L.P. v. Moe's Sw. Grill, L.L.C.*, 426 F. Supp. 2d 1356, 1371–72 (N.D. Ga. 2006) ("When neither side disputes the existence of a valid contract, the doctrine of promissory estoppel does not apply, even when it is asserted in the alternative."); *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 849 (S.D. Ind. 2005) ("Plaintiffs' unjust enrichment claim becomes superfluous when neither side disputes the existence of a valid contract, even if it is being alleged in the alternative").

Plaintiffs have alleged no such facts here and cannot state a claim for unjust enrichment as an alternative to their breach of contract claim.

## IV.    **The Court Should Dismiss Plaintiffs' Consumer Fraud Claims.**

The Court should dismiss Plaintiffs' consumer fraud claims (Fourth – Ninth Causes of Action) for three reasons.  First, what Plaintiffs have alleged – a breach of contract – is not a deceptive practice under the consumer fraud statutes.  Second, Plaintiffs have not stated the circumstances constituting misrepresentation or deception with anywhere near the particularity required by Fed. R. Civ. P. 9(b).  Third, Plaintiffs have not alleged that they relied on anything

Menards allegedly said – e.g., a Menards' advertisement – that was untrue deceptive or misleading or that they suffered an ascertainable loss because of it.

A.    **A Breach of Contract is Not a Deceptive Practice.**

By alleging violations of consumer protection laws from six different states (Comp. at ¶¶ 181-281), Plaintiffs concede that the law of the jurisdictions in which the alleged misrepresentations and sales occurred governs.  While those laws vary in a number of critical ways, there is one legal principal relevant to each one: a breach of a contractual promise, without more, is not actionable as a consumer fraud/deceptive practice.

This is because consumer protections statutes were "not intended to apply to every contract dispute or to supplement every breach of contract claim with a redundant remedy." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011); *Phila. Indem. Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (holding that plaintiff's claim "is nothing more than an allegation of breach of contract dressed up in Consumer Fraud Act clothing"); *Dura-Wood Treating Co. v. Century Forest Indus., Inc.,* 675 F.2d 745, 756 (5th Cir. 1982) ("an allegation of breach of contract—without more—does not constitute a false, misleading, or deceptive action such as would violate [the Texas] DTPA."); *Bartolomeo v. S.B. Thomas, Inc*., 889 F.2d 530 (4th Cir. 1989) ("[a] simple breach of contract, even if intentional, does not amount to a violation of the [North Carolina's Unfair and Deceptive Trade Practices Act]."); *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 169 (Ill. 2005) (holding that "a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract.") (internal citations omitted); *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc*., 62 P.3d 142, 148 (Colo. 2003) ("[a] breach of contract claim, without additional conduct, cannot constitute an

actionable claim under the [Colorado Consumer Protection Act].”); *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 99 (N.M. 1991) (holding that a breach of contract is not a deceptive practice under the New Mexico Unfair Practices Act).

The Seventh Circuit's decision in *Greenberger*, dealing with the Illinois Consumer Fraud Act, is instructive.  Like the other state consumer fraud acts at issue here, the Illinois act provides a remedy for “unfair methods of competition and unfair or deceptive acts or practices,” including “false promise[s], misrepresentation [s] ... or omission[s] of any material fact.”  815 ILCS 505/2.[12]  Greenberger alleged that GEICO violated this act by falsely promising to restore its insureds' vehicles to their pre-loss condition and failing to disclose to policyholders that it would not keep this promise.  631 F.3d at 399.

The district court dismissed the claim and the Seventh Circuit affirmed.  The Seventh Circuit held that the Act “required something more than a garden-variety breach of contract”:

> Greenberger insists that his consumer-fraud claim is based on more than a simple breach of contract because it alleges both a “false promise” and a material “omission,” both of which are included in the Consumer Fraud Act's definition of “unfair or deceptive acts or practices.” These allegations, however, are nothing more than restatements of the claimed breach of contract, albeit using the language of fraud. *Avery* squarely rejected a nearly identical effort to turn a mere breach of contract into a fraud; “[a]s a matter of law, plaintiffs' consumer fraud claim may not be based on the assertion that State Farm breached its promise to restore plaintiffs' vehicles to their 'pre-loss condition'....” 296 Ill. Dec. 448, 835 N.E.2d at 844. When allegations of consumer fraud arise in a contractual setting, the plaintiff must prove that the defendant engaged in deceptive acts or practices distinct from any underlying breach of contract. *Id. Avery* explained that “a 'deceptive act or practice' involves more than the mere fact that a defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract.” *Id.* (quoting *Zankle,* 244 Ill. Dec. 100, 724 N.E.2d at 993). Here, as in *Avery,* the consumer fraud and contract claims rest on the same factual foundation; no distinct deceptive acts are alleged.

---

[12] Other consumer fraud statutes on which Plaintiff rely contain similar language.  *See* North Dakota Unfair Trade Practices Law, ND Cent. Code § 51-15-02; Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010; Wis. Stat. ¶ 100.18; Ohio Rev. Code § 1345.02; Mich. Comp. Laws § 445.901. (*See* Compl. at ¶¶ 199, 211-12, 228, 241, 255, 269.)

*Id*. at 399; *see also Gritters v. Ocwen Loan Servicing, LLC*, 2018 WL 1784134, at *14 (N.D. Ill. Apr. 13, 2018) (dismissing an ICFA claim that "simply restate[d] the alleged breach" of contract); *Golbeck v. Johnson Blumberg & Assocs., LLC*, 2017 WL 3070868, at *13-14 (N.D. Ill. July 19, 2017) (same); *Geske v. Fed. Nat'l Mortg. Ass'n*, 2015 WL 1397087, at *3 (N.D. Ill. Mar. 25, 2015).

The Seventh Circuit also rejected Greenberger's argument that his allegations that GEICO's breaches of contract were "widespread" or "systematic"[13] distinguished his claim from a typical breach of contract claim:

> That Greenberger has alleged a "widespread" or "systematic" breach of contract does not suffice to state a claim for consumer fraud under the statute. Greenberger has cited a number of cases involving allegations of systemic fraud in violation of the Consumer Fraud Act, but all are distinguishable because they involved affirmative acts of misrepresentation and not a simple breach of contract multiplied over a prospective plaintiff class. . . .  Greenberger is correct that a widespread, systematic practice of engaging in unfair or deceptive conduct, even in a contractual setting, may be actionable under the statute.  But that general proposition doesn't get him very far.  It is not the existence of the contract that defeats his consumer-fraud claim, but rather his failure to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise.

631 F.3d at 400.

As in *Greenberger*, Plaintiffs have failed to allege any unfair or deceptive conduct distinct from the alleged breach of a contractual promise.  Indeed, each of Plaintiffs' consumer fraud act claims are based on nothing more than Plaintiffs' allegations that Menards failed to comply with is contractual obligation to provide an 11% rebate to them:

> 202.   Upon information and belief, and given the fact that Menards offered, implemented and/or managed the Menards rebate program, Menards knew or should have known that it deceptively and unfairly advertised the

---

[13] As in *Greenberger*, in this case Plaintiffs also conclude, without any factual support, that Menards' breaches are "systematic and ongoing" and are part of a program designed to ensure that consumers rarely receive the appropriate rebate amount.  (Compl. at ¶¶ 6-8, 33, 36, 181-186.)

Menards rebate program to consumers, and misrepresented the amount of the rebate checks mailed to customers.

203.   Specifically, Menards promised consumers, through its "11% Off Everything" rebate promotion, that if they purchased any product at Menards during the promotion and timely sent in a completed rebate form, they would receive a rebate check amounting to 11% of the value of their purchase within 6-8 weeks.

204.   Despite those promises, Menards did not provide a full rebate check to the members of the [State] Mail-In Rebate Class and minimized its rebate obligations.

*          *          *

208.   Menards' failure to fulfill its rebate obligations to Plaintiffs and the [State] Mail-In Rebate Class members was unfair, deceptive, and misleading.

(Comp. ¶¶ 202-204, 208 (Wis.), 217-19, 224 (Ill.), 232-34, 238 (Mich.), 246-48, 252 (Mo.), 260-62, 266 (N.D.), 273-75, 280 (Ohio).)

As the Seventh Circuit has held, these allegations do not support a claim for consumer fraud.  *See Greenberger*, 631 F.2d at 399.  The problem remains that Plaintiffs have failed to allege any unfair, deceptive or misleading conduct distinct from the alleged breach of a contractual promise.  To be clear, they do not contend that they were confused or deceived by the terms of the 11% rebate sale.  Rather, they allege that they fully understood and accepted those terms, but did not receive the benefit of the bargain.  This is not consumer fraud.

**B.**     **Plaintiffs Have Not Complied With Rule 9(b).**

The federal courts have repeatedly held that "[c]laims for violation of the Consumer Fraud Act are subject to the same heightened pleading standards as other fraud claims; as such, they must satisfy the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure."  *Greenberger*, 631 F.3d at 399; *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014); *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005);

*Wright v. Bath & Body Works Direct, Inc.*, 2012 WL 12951921, at \*5-6 (W.D. Mo. July 7, 2012); *Baryo v. Philip Morris USA, Inc.*, 435 F. Supp.2d 961, 968 (W.D. Mo. 2006); *In re Ford Motor Co. Speed Control Deactivation Switch Prods. Liab. Litig.*, 2007 WL 2421480, at \*9 (E.D. Mich. 2007) (holding that "State consumer-fraud act claims asserted in federal court must satisfy Rule 9(b)."). This means that "conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Baryo*, 435 F. Supp. 2d at 968; *Wright*, 2012 WL 12951921, at \*5-6; *see also Greenberger*, 631 F.3d at 400 (plaintiff's allegation of a "widespread and systemic breach of contract" by the defendant is a general proposition that does not satisfy the heightened pleading standards for consumer fraud). Rather, plaintiffs must provide the who, what, when, where, why and how of defendant's fraudulent or deceptive practice. *Camasta*, 761 F.3d at 738 (internal citation omitted).

In this case, however, conclusory allegations that Menards' "misrepresented" the amount of the rebate (*see* Compl. ¶¶ 202, 217, 232, 246, 260, 273) and that the 11% rebate sale was unfair, deceptive and misleading (*see id*. at p. 2, ¶¶ 7-9, 208, 224, 238, 252, 266, 280) are all that Plaintiffs offer. Plaintiffs do not identify the ads that they saw, when and where they saw them, and how or why they were deceived by them. Instead, Plaintiffs simply claim that "Menards' failure to fully and timely fulfill its rebate obligations to Plaintiffs . . . was unfair, deceptive, and misleading." (Compl. at ¶¶ 208, 224, 238, 252, 266, 280.)

Plaintiffs' allegations are insufficient. Millions of customers who participate in the 11% rebate sale **do** receive such merchandise credits. Indeed, Plaintiff Rider admits that she had previously received merchandise credits from Menards without incident. (*Id*. at ¶ 65.) As indicated, there are many reasons, beyond Menards' control, why Plaintiffs may not have received such merchandise credits. Plaintiffs' failure to receive their merchandise credits, by

itself, does not make the 11% rebate program unfair, deceptive or misleading.   Certainly,

Plaintiffs do not allege with the particularity Rule 9(b) requires why this would be true.   And

bare assertions that such breaches are unfair and violate public policy (Compl. at ¶¶ 216, 231,

245, 259, 272) are insufficient to state a cause of action.   *Geske,* 2015 WL 1397087, at \*3;

*Golbeck*, 2017 WL 3070868, at \*13-14; *Robinson,* 201 Ill. 2d at 421.

### C.   Plaintiffs Have Failed to Allege That They Relied on a Menards' Advertisement that Was Untrue, Deceptive or Misleading or Suffered an <u>Ascertainable Loss As a Result.</u>

The consumer fraud statutes on which Plaintiffs rely have different standards for reliance,

knowledge and causation.   In Michigan, for example, a class representative must show reliance

in order to state an individual claim under the Michigan Consumer Protection Act.   *See Kussy v.*

*Home Depot U.S.A., Inc.*, 2006 WL 3447146, at \*7 (E.D. Mich. Nov. 28, 2006).   In Illinois, a

plaintiff must show that the allegedly deceptive ad proximately caused his/her injury.   *Clark v.*

*Experian Info. Solutions, Inc.*, 256 Fed. App'x 818, 821-22 (7th Cir. 2007).   The Missouri

Merchandising Practices Act requires that a plaintiff suffered an ascertainable loss of money or

property, as a result of an act declared unlawful by Mo. Rev. Stat. § 407.020(1).   *See* Mo. Rev.

Stat. § 407.025 (providing for a civil cause of action for violations of § 407.020); *Hess v. Chase*

*Manhattan Bank, USA, N.A.,* 220 S.W.3d 758, 773 (Mo. 2007) (*en banc*) (explaining the civil

cause of action).

Likewise, a claim under Wis. Stat § 100.18 requires three elements: "(1) the defendant

made a representation to 'the public' with the intent to induce an obligation, (2) the

representation was 'untrue, deceptive or misleading,' and (3) the representation materially

caused a pecuniary loss to the Rikkers." *Spacesaver Corp. v. Marvel Grp., Inc.*, 621 F. Supp.2d

659, 662 (W.D. Wis. 2009) (internal citation omitted).   This means that a plaintiff must allege

that the representation "materially ***induce[d] the Plaintiff's decision to act***." *Id.* at 663 (emphasis in original).

Regardless of the standard, Plaintiffs do not begin to meet their burden.  They have not identified specific representations that Menards made to them on which they relied, which induced their decision to act, and caused them a loss.  Instead, all that they allege is that they made purchases during 11% rebate sales without more.  (Compl. at ¶¶ 60, 68, 74, 78, 86, 96, 106, 113, 121, 131, 142, 150, 158, 168.)  That is not enough to satisfy the consumer fraud acts and the Court should dismiss Plaintiffs' Fourth through Ninth Causes of Action for this reason as well.[14]

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' claims for breach of contract (First Cause of Action), breach of the duty of good faith and fair dealing (Second Cause of Action), unjust enrichment (Third Cause of Action), and violations of state consumer fraud and deceptive practices acts  (Fourth – Ninth Causes of Action).

Dated: April 13, 2020                          Respectfully submitted,

/s/ Brian P. Norton
Brian P. Norton
James J. Boland
Andrew C. Nordahl
Freeborn & Peters, LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60601-6677
Tel: (312) 360-6000
Fax: (312) 360-6520

*Attorneys for Defendant Menard, Inc.*

---

[14] In addition, Plaintiffs' claim in their Ninth Cause of Action that Menards violated the Ohio Consumer Sales Practices Act.  However, Plaintiffs failed to comply with Section 1345.09(B)'s notice requirement, which requires Plaintiffs who wish to proceed in a class action to identify in their complaint a prior rule or case wherein substantially similar actions were declared to be deceptive or unconscionable.  *See* Ohio Rev. Code § 1345.09(B); *Johnson v. Microsoft Corp.*, 155 Ohio App.3d 626, 2003-Ohio-7153, 802 N.E.2d 712, at ¶ 21.  For this separate reason, Plaintiffs' Ninth Cause of Action should be dismissed.