IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AMY CHILDERS, BARRY EARLS, THOMAS
FETSCH, CODY ITALIA, DAVID KIEL, NAZAR
MANSOOR, DEBBIE RIDER, TRENT SHORES,
STEVE SCHUSSLER, CASSIE LIETAERT, RYAN
INGALLS, CHRIS JESSE, and KAREN
FLECKENSTEIN, individually and on behalf of a class
of similarly situated individuals,

                Plaintiffs,

   v.

MENARD, INC., and JOHN DOES 1–10,

                Defendants.

OPINION and ORDER

20-cv-107-jdp

---

This proposed class action concerns a promotion offered by defendant Menard, Inc., owner of Menards home improvement stores. Plaintiffs, a group of Menards customers, say that Menards promised to give them vouchers for use on future purchases, but then gave smaller vouchers than promised or no vouchers at all. They bring claims against Menards for breach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment, as well as claims under the consumer-fraud laws of each of the six states where plaintiffs live.[1]

Two motions are before the court. First, Menards asks the court to compel six of the 13 plaintiffs to arbitrate their claims because they signed forms containing arbitration clauses. Dkt. 7. The court agrees that these plaintiffs must arbitrate their claims, so it will grant the

---

[1] Plaintiffs also name "John Does 1–10" as defendants in their complaint, but none of plaintiffs' claims or allegations are directed at or even mention any Doe defendants. The parties do not address this issue, but it is not relevant to this opinion.

motion and dismiss their claims without prejudice. Second, Menards asks the court to dismiss the remaining plaintiffs' claims. Plaintiffs' consumer-fraud claims fail to comply with the Federal Rules of Civil Procedure, so the court will dismiss those claims without prejudice. But, for reasons explained below, the court will not dismiss the other claims.

## BACKGROUND

Menards periodically offers promotions in which a customer can obtain a voucher applicable to future Menards purchases. Although the customers receive vouchers, not money back, both sides refer to this as a "rebate," so the court will do the same. The promotion typically offers a rebate in the amount of 11 percent of the customer's total purchase, but Menards sometimes offers promotions specific to particular products for rebates in other amounts. Both sides provide similar descriptions of the basic steps that a customer must follow to receive a rebate—plaintiffs in their complaint, Dkt. 1, ¶¶ 38–42, and Menards in a declaration from marketing manager Michael Every, Dkt. 9, ¶¶ 5–6. After customers purchase products that are subject to a rebate, they are given two receipts—a purchase receipt and what Menards calls a "rebate receipt." After making their purchases, customers take their rebate receipts to a customer service desk to obtain a rebate form. Before a date specified on the rebate form, customers must complete the form and mail it, along with their purchase receipts, to a Wisconsin post office box.

All of Menards' rebate forms after December 3, 2017, included an arbitration provision stating, in relevant part, "By submitting the rebate form, you agree to resolve any disputes related to rebate redemption by binding arbitration and you waive any right to file or

participate in a class action." Dkt. 9, ¶ 8. The rebate form directs customers to a website, www.rebateinternational.com, containing further terms and conditions regarding arbitration.

Plaintiffs plausibly allege that this court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) and (6), because the amount in controversy exceeds $5,000,000, because the putative class exceeds 100 members, and because a number of the named plaintiffs and putative class members are diverse in citizenship from Menards.

## ANALYSIS

**A. Choice of law**

The parties disagree about what states' laws the court should apply to plaintiffs' claims. Menards says that the law of the state in which each plaintiff made his or her purchase should apply to that plaintiff. Plaintiffs don't dispute the point as it concerns their statutory consumer-protection claims, but they say that Wisconsin law should apply to Menards' motion to compel arbitration and to plaintiffs' other common-law claims.

The court's jurisdiction over this case is based on diversity, so the court must apply the choice-of-law rules of the forum state. *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 50 F.3d 476, 478 (7th Cir. 1995). "The first rule in Wisconsin choice of law rules is 'that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance.'" *State Farm Mut. Auto. Ins. Co. v. Gillette*, 2002 WI 31, ¶ 51, 251 Wis. 2d 561, 641 N.W.2d 662 (quoting *Hunker v. Royal Indem. Co.*, 57 Wis. 2d 588, 204 N.W.2d 897, 902 (1973)). But even if nonforum contacts have greater than significance than Wisconsin contacts, the court will apply Wisconsin law if it does not conflict with the other state's law. *Sharp ex rel. Gordon v. Case Corp.*, 227 Wis. 2d 1, 595 N.W.2d 380, 384 (1999).

The court can resolve most of the questions raised in Menards' motions on basic legal principles that do not differ across the states where the plaintiffs made their purchases, so the court will apply Wisconsin law unless it conflicts with another state's law with a stronger connection to a particular claim. At this point, the court sees no reason to look to the law of any state besides Wisconsin, with the exception of the statutory consumer-protection claims, which are governed by the law of the state where the purchase was made.

**B.  Motion to compel arbitration**

Menards says that six of the plaintiffs—Amy Childers, Cody Italia, Nazar Mansoor, Debbie Rider, Ryan Ingalls, and Karen Fleckenstein—should be required to arbitrate their claims because they completed rebate forms that contained an arbitration clause. Plaintiffs don't dispute that these six plaintiffs signed rebate forms containing an arbitration clause that applies to their claims, so they bear the burden of demonstrating that the clause is unenforceable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000). They contend that the arbitration clause is unenforceable for two reasons: (1) it is an after-the-fact modification of a material term of their purchase contracts; and (2) it is procedurally unconscionable.

    **1.  Modification of the purchase contract**

Plaintiffs contend that the arbitration clause is invalid because it is an after-the-fact modification of contracts to purchase goods from Menards. They argue that the rebate was a material term of the purchase contracts because Menards advertised the rebate to induce them to buy products from Menards. In their complaint, plaintiffs include an example of a Menards advertisement that lists certain terms of the rebate but does not mention the arbitration clause.

Dkt. 1, ¶ 51–52. They say that Menards was prohibited from adding the arbitration clause to the terms of the rebate without their assent after they completed their purchases.

This argument fails for two reasons. First, as Menards notes, plaintiffs' complaint describes a purchase contract that wasn't completed until plaintiffs completed the rebate forms, which contained the arbitration clause:

> Based on the rebate forms that they filled out and submitted, Plaintiffs . . . agreed to purchase the products that were eligible for rebate. That is, Plaintiffs . . . paid, and Menards accepted, the purchase price for the products and submitted valid rebate applications, and therefore performed their obligations under the specific rebate forms.

Dkt. 1, ¶ 184. If the rebate forms were part of the purchase contracts, as plaintiffs' complaint says, then terms contained on those rebate forms cannot be after-the-fact modifications, as the contracts described in the complaint were not formed until plaintiffs signed the rebate forms.

Second, even if the arbitration clause was an after-the-fact modification to the purchase contract, Menards was allowed to make such a modification because plaintiffs still had the opportunity to return their purchases when they signed the rebate forms. *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997), shows why this is so.[2] In that case, the plaintiffs purchased a computer over the phone. When their computer arrived, the packaging contained a list of terms, including an arbitration clause, that purported to bind the plaintiffs unless they returned the computer within 30 days. *Id.* at 1148. The court noted that there are "many commercial transactions in which people pay for products with terms to follow," and held that the seller

---

[2] *Hill*'s holding was based on the Uniform Commercial Code (UCC), not state law. *Hill*, 105 F.3d at 1149. All five of the states at issue in this motion have adopted the UCC. *See* Wis. Stat. ch. 401 et seq.; 810 Ill. Comp. Stat. 5; Mich. Comp. Laws ch. 440; Mo. Rev. Stat. ch. 400; Ohio Rev. Code ch. 1301 et seq.

5

was free to include additional purchase terms in the packaging because the plaintiffs had the opportunity to reject the terms after reviewing them by returning their computer. *Id.*

Here, plaintiffs contend that the arbitration clause is unconscionable because they "were deceived into filling out a form—in order to get the bargain they had already paid for—which stripped them of their rights without notice or consent." Dkt. 19, at 20. But under *Hill*, Menards was free to disclose some terms of the rebate—including the arbitration provision—after the sale was made, so long as plaintiffs had a reasonable opportunity to return their purchases. Menards gave plaintiffs the rebate forms containing the arbitration clause while they were still in the store and could easily have returned their purchases. *Hill* shows that this was enough to prevent the clause from being invalidated as a modification to the purchase contract.

### 2. Procedural unconscionability

Plaintiffs contend that the arbitration clause is procedurally unconscionable—that is, that they were unfairly compelled to accept it—because they had to accept it to receive the rebates they were promised. Plaintiffs rely exclusively on Wisconsin law in support of their argument for unconscionability, and Menards contends that the law of each plaintiff's state should apply to that plaintiff's claims. But even assuming that all of plaintiffs' purchases were governed by the Wisconsin law on which they rely, their argument still fails because they haven't shown that the substance of the arbitration clause is also unconscionable, as required by Wisconsin law. This failure dooms plaintiffs' argument, so the court does not need to consider Menards' alternative argument that plaintiffs have not adduced sufficient factual evidence of the arbitration clause's procedural unconscionability.

Under Wisconsin law, unconscionability is "the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the

other party." *Wis. Auto Title Loans, Inc. v. Jones*, 2006 WI 53, ¶ 32, 290 Wis. 2d 514, 714 N.W.2d 155. In other words, unconscionability has both a procedural component, which concerns whether the contract was formed fairly, and a substantive component, which concerns whether the contractual provision itself is reasonable. *Id.*, ¶¶ 34–35. A court must find both "a certain quantum of procedural plus a certain quantum of substantive unconscionability" to conclude that a contract provision is unconscionable. *Id.*, ¶ 33 (quoting *Discount Fabric House of Racine, Inc. v. Wis. Tel. Co.*, 117 Wis. 2d 587, 345 N.W.2d 417, 425 (1984)). If more procedural unconscionability is found, less substantive unconscionability will be required to hold a provision unconscionable, and vice versa, but "a mixture of both" is required. *Id.*

Plaintiffs contend only that the arbitration clause is procedurally unconscionable; they do not address its substantive unconscionability at all. *See* Dkt. 18, at 13–16. Without any showing that the arbitration clause is substantively unconscionable—that is, that its terms unreasonably favor Menards—the court cannot find it unconscionable, regardless of plaintiffs' contention that its formation was procedurally unconscionable. *See Cottonwood Fin., Ltd. v. Estes*, 2012 WI App 12, ¶ 7, 339 Wis. 2d 472, 810 N.W.2d 852 (if contract provision is not substantively unconscionable, court does not need to consider whether it was procedurally unconscionable).

Neither of plaintiffs' arguments for the unenforceability of the arbitration clause succeeds. So the court will grant Menards' motion to compel arbitration. A court granting a motion to compel arbitration will usually stay the arbitrable claims pursuant to 9 U.S.C. § 3. But "there is a growing trend among federal courts . . . favoring dismissal of a case when all of the claims are subject to arbitration." *Felland v. Clifton*, No. 10-cv-664-slc, 2013 WL 2778967, at *11 (W.D. Wis. July 18, 2013) (collecting cases). And the court of appeals "has repeatedly

affirmed district courts' decisions to dismiss suits where all claims are arbitrable." *Chambers v. Aviva Life & Annuity Co.*, No. 12 C 9589, 2013 WL 1345455, at *5 (N.D. Ill. Mar. 26, 2013) (collecting cases). All of these plaintiffs' claims are subject to arbitration, so the court will dismiss the claims of these plaintiffs without prejudice.

## C. Motion to dismiss

Menards moves to dismiss each of the remaining plaintiffs' claims on various grounds, which the court addresses in the sections that follow.

### 1. Breach of contract

Menards raises two challenges to plaintiffs' breach of contract claims. First, it contends that the most of the plaintiffs' allegations show that they failed to attach receipts to their rebate applications as required by the rebate's terms. An act that must occur before a party is required to perform under a contract is called a condition precedent. *See, e.g.*, *Anderson v. Aul*, 2015 WI 19, ¶ 66, 361 Wis. 2d 63, 862 N.W.2d 304. Under Federal Rule of Civil Procedure 9(c), plaintiffs need not affirmatively allege that they have complied with each specific condition precedent; rather, "it suffices to allege generally that all conditions precedent have occurred or been performed."

In their complaint, plaintiffs allege that they "submitted valid rebate applications" and "performed their obligations under the specific rebate forms." Dkt, 1, ¶ 184. These general allegations are enough to comply with Rule 9(c)'s requirements for conditions precedent. Menards says that because two of the plaintiffs (Rider and Childers, whose claims are subject to arbitration as addressed above) specifically alleged that they attached their receipts to their rebate forms, *see id.*, ¶¶ 63 and 161, the other plaintiffs have pleaded themselves out of court by failing to allege that they also included their receipts. But the authorities on which Menards

8

relies for this argument say only that plaintiffs may plead themselves out of court by making affirmative allegations showing that they have no claim, *Thomas v. Farley*, 31 F.3d 557, 558–59 (7th Cir. 1994), or by making factual allegations that contradict their legal conclusions, *Steidl v. Gramley*, 151 F.3d 739, 741 (7th Cir. 1998). These cases do not say that if one plaintiff unnecessarily alleges that she performed a specific condition precedent, the court must infer that the other plaintiffs did not perform that condition precedent. Rule 9(c) required plaintiffs only to allege generally that they complied with all conditions precedent, which they have done.

Second, Menards contends that six of the plaintiffs' claims for breach of contract should be dismissed because those plaintiffs allege that they inquired about the status of their rebates and found that there was no record of their rebate submissions. Three of those plaintiffs' claims are subject to arbitration (the claims of Ingalls, Italia, and Fleckenstein), so the court does not need to consider Menards' motion as it concerns those plaintiffs. That leaves the other three plaintiffs Menards identifies—Trent Shores, Cassie Lietaert, and Thomas Fetsch.

Menards says that because these plaintiffs allege that there was no record of their rebate submissions, Menards was excused from having to send them their rebates. Menards relies on the Restatement (Second) of Contracts, which says that a party is excused from performance if performance becomes impracticable because of "the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." Restatement (Second) of Contracts § 261 (Am. Law. Inst. 1981). Menards suggests that these plaintiffs' rebate forms may not have been received because they were improperly addressed, lacked adequate postage, or were otherwise lost in the mail. But plaintiffs allege generally that "for many Menards' rebate customers, Menards fails to acknowledge the receipt of their rebate form submissions" on its online rebate tracker." Dkt. 1, ¶ 50. In other words, plaintiffs allege that

9

Menards sometimes receives rebate forms but fails to record them. Plaintiffs will, of course, have to support this allegation with evidence later in this lawsuit, but on a motion to dismiss, the court must take it as true. Based on this allegation, the court may infer that there was no record of their rebate submissions because Menards failed to record their submissions. The court will not dismiss these plaintiffs' claims for breach of contract.

### 2. Breach of the implied duty of good faith and fair dealing

Wisconsin, like other jurisdictions, recognizes an implied duty of good faith and fair dealing in every contract. *Home Valu, Inc. v. Pep Boys—Manny, Moe and Jack of Del., Inc.*, 213 F.3d 960, 965–66 (7th Cir. 2000). Courts use this duty as a rule of construction to "fill contractual gaps," *id.* at 597 (quoting *Cont'l Bank, N.A. v. Everett*, 964 F.2d 701, 705 (7th Cir. 1992)), to prevent parties from acting in a manner that "follow[s] the letter but not the spirit of an agreement," *Beidel v. Sideline Software, Inc.*, 2013 WI 56, ¶ 27, 348 Wis. 2d 360, 842 N.W.2d 240.

Menards contends that plaintiffs' good-faith claim should be dismissed because the duty doesn't create a standalone obligation that exists independently of the parties' contractual obligations.[3] Menards is correct that breach of the duty of good faith isn't a separate claim from breach of contract. Rather, a good-faith claim is essentially a claim that a party has breached a contract's implicit obligations instead of the explicit ones. *See id.*, ¶¶ 27–28. As plaintiffs note, they are free to plead this claim in the alternative to their claim that Menards breached the explicit terms of its contracts with plaintiffs, even if those claims are inconsistent

---

[3] Menards also contends that the court should dismiss the good-faith claims of the plaintiffs who did not allege that they submitted receipts because Menards was permitted to reject their rebate applications for that reason. This duplicates Menards' argument regarding plaintiffs' claims for breach of contract, and it fails here for the same reasons.

with one another. Fed. R. Civ. P. 8(d)(2), (3). Of course, if plaintiffs prove that Menards has breached an express term of the contract, they cannot recover under the duty of good faith for the same breach. *See Home Valu*, 213 F.3d at 966.

Menards says that plaintiffs did not plead their good-faith claim in the alternative to their claim for breach of contract for two reasons. First, they note that plaintiffs expressly stated in the title of their unjust-enrichment claim that it was pleaded in the alternative but did not do so for their good-faith claim. And second, noting that the first paragraph of plaintiffs' good-faith claim incorporates plaintiffs' previous allegations, they say that this includes plaintiffs' allegations that Menards expressly breached the contract. Both of these formalistic arguments ignore the fact that plaintiffs expressly allege that "[i]f the Court finds Menards ultimately fulfilled the terms of its contracts, then Menards has still breached the implied covenant of good faith and fair dealing," Dkt. 1, ¶ 188. This plainly describes a claim in the alternative to plaintiffs' claim for breach of contract. So the court will not dismiss this claim.

### 3. Unjust enrichment

Menards contends that plaintiffs' unjust-enrichment claim should be dismissed because such a claim is "quasi-contractual . . . and can be invoked only in the absence of an enforceable contract," *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011) (applying Wisconsin law). Menards acknowledges that plaintiffs have the right to plead this claim in the alternative to their contractual claims and that plaintiffs' complaint purports to do so. But Menards contends that plaintiffs have not pleaded this claim in the alternative for two reasons.

First, as with plaintiffs' good-faith claim, Menards contends that plaintiffs' unjust-enrichment claim isn't pleaded in the alternative because it incorporates plaintiffs' previous allegations, including the allegation that plaintiffs "entered into specific agreements with

11

Menards," Dkt. 1, ¶ 182. But again, plaintiffs expressly say that their unjust-enrichment claim will apply only if the court finds their "contracts with Menards invalid, non-existent, or unenforceable." *Id.*, ¶ 193. So this argument fails for the same reason it failed regarding plaintiffs' good-faith claim.

Second, Menards relies on *Harley Marine Services, Inc. v. Manitowoc Marine Group, LLC*, 759 F. Supp. 2d 1059, 1062–63 (E.D. Wis. 2010), in which the court dismissed an unjust-enrichment claim because the plaintiffs had "assert[ed] a breach of contract claim and fail[ed] to allege any facts from which it could at least be inferred that the contract on which that claim is based might be invalid." But in that case, the defendants had already submitted an answer in which they didn't dispute the alleged contract's existence or validity. *Id.* Here, Menards has not yet answered plaintiffs' complaint, so it is too early to tell whether it will dispute that the rebate forms are valid contracts. Dismissal of plaintiffs' alternative claim would be inappropriate at this early stage. *See Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1017 (W.D. Wis. 2008) ("Although plaintiff would not be able to recover under its quasi-contract claims if there was in fact a contract governing its relationship with defendant, it is free to plead such alternative theories at this stage of the litigation.").

4. **Consumer fraud**

Plaintiffs bring claims against Menards under six states' consumer-fraud statutes that prohibit false or fraudulent advertisements. Dkt 1, ¶¶ 198–281. The only plaintiffs bringing claims under Missouri law (Italia) and Ohio law (Fleckenstein) must arbitrate their claims, so plaintiffs' consumer-fraud claims under those states' laws are dismissed as discussed above. This leaves plaintiffs' claims under the laws of Wisconsin, Illinois, Michigan, and North Dakota. Although these claims differ in their particulars, they are based on the same alleged

12

conduct: that Menards falsely advertised that customers who purchased products during the rebate promotions and timely submitted valid rebate forms would receive rebate vouchers worth a particular amount within a given time. Menards says that these claims should be dismissed for three reasons.

First, Menards contends that plaintiffs have improperly repackaged their basic breach-of-contract claims as consumer-fraud claims. In essence, Menards says that these laws require more than allegations that a party promised to perform under a contract but failed to perform. It argues that because "[p]laintiffs have failed to allege any unfair or deceptive conduct distinct from [Menards'] alleged breach of a contractual promise," their consumer-fraud claims must be dismissed. Dkt. 11, at 20.

Menards primarily relies on *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392 (7th Cir. 2011). In that case, the plaintiff alleged that the defendant insurance company had violated Illinois's consumer-fraud law "by falsely promising to restore its insureds' vehicles to their preloss condition and failing to disclose to policyholders that it would not keep this promise." *Id.* at 399. The court upheld the dismissal of this claim based on *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005), which held that "[a] breach of contractual promise, without more, is not actionable" under Illinois's consumer-fraud law. The court held that the plaintiff's allegations of "a 'widespread' or 'systematic' breach of contract" didn't state a consumer-fraud claim because the plaintiff hadn't alleged any "affirmative acts of misrepresentation," only "a simple breach of contract multiplied over a prospective plaintiff class." *Greenberger*, 631 F.3d at 400.

Menards says that the principles in *Greenberger* are applicable to all of plaintiffs' consumer-fraud claims, but plaintiffs say that it applies only to their claim based on Illinois's

13

statute. But even assuming that *Greenberger*'s principles apply generally, plaintiffs have satisfied its requirements by alleging that Menards falsely advertises that customers will receive certain rebates but "systematically and routinely denies or substantially underpays promised rebates and takes steps to further drive down the redemption rate." Dkt. 1, ¶ 59. These allegations accuse Menards of engaging in affirmative acts of misrepresentation in its advertisements, which is enough to state a claim under *Greenberger*.

Second, Menards contends that plaintiffs haven't complied with the heightened pleading standards for claims of fraud. Plaintiffs don't dispute that the heightened pleading standards of Federal Rule of Civil Procedure 9(b) apply to these claims. Rule 9(b) requires plaintiffs to allege the circumstances of fraud "with particularity," which the court of appeals has described as the details contained in "the first paragraph of any newspaper story: 'the who, what, when, where, and how.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).

Plaintiffs argue that their complaint satisfies this standard because it contains three examples of advertisements for Menards' rebate promotions, *see* Dkt. 1, ¶¶ 51, 53, and because each plaintiff identifies the date on which he or she purchased goods from Menards. It is true that plaintiffs alleging that they have been deceived by an advertisement need not "provide the precise date, time, and location that [they] saw the advertisement or every word that was included on it." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014). But as Menards notes, plaintiffs don't allege that they saw *any* Menards advertisements, including the examples in their complaint. They say only that they purchased goods from Menards on a particular date that fell during a rebate promotion. *See, e.g.*, Dkt. 1, ¶ 60. This doesn't meet Rule 9(b)'s heightened pleading standards.

Third, Menards says that plaintiffs have failed to state claims under these statutes because they didn't allege that they relied on Menards' misrepresentations in making their purchases. Plaintiffs contend that they do not have to plead actual reliance, but this misconstrues Menards' argument. Menards argues that because plaintiffs' consumer-fraud claims are premised on the allegation that Menards engaged in deceptive advertisement, plaintiffs must allege that their damages were caused by those advertisements. All of the state consumer-fraud statutes on which plaintiffs rely require plaintiffs to show such a causal connection between Menards' misrepresentations and their damages.[4] None of the plaintiffs allege that they saw an advertisement for a Menards' rebate promotion or that any advertisement factored into their decisions to purchase goods from Menards. So plaintiffs have failed to state claims upon which relief may be granted, which warrants dismissal under Federal Rule of Civil Procedure 12(b)(6).

Because plaintiffs' consumer-fraud claims do not comply with Rule 9(b) and 12(b)(6), the court will dismiss them. This litigation is still in its early stages and it would be possible for plaintiffs to cure these defects in an amended complaint, so the court will dismiss these claims without prejudice to plaintiffs' repleading them. *See Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018) ("The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile.").

---

[4] Wis. Stat. § 100.18(11)(b) (action may be brought by "[a]ny person suffering pecuniary loss because of a violation of this section"); 815 Ill. Comp. Stat. 505/10a(a) (action may be brought by "[a]ny person who suffers actual damage as a result of a violation of this Act"); Mich. Comp. Laws § 445.911(2), (3) (action may be brought by "person who suffers loss as a result of a violation of this act"); N.D. Cent. Code § 51-15-09 (statute authorizing state attorney general to enforce consumer-fraud laws "does not bar any claim for relief by any person against any person who has acquired any moneys or property by means of any practice declared to be unlawful in this chapter").

CONCLUSION

Six of the plaintiffs have entered into enforceable arbitration agreements with Menards, so those plaintiffs must arbitrate their claims. The remaining plaintiffs' consumer-fraud claims under Wisconsin, Illinois, Michigan, and North Dakota law fail to comply with the Federal Rules of Civil Procedure. The court will dismiss those claims without prejudice and give the remaining plaintiffs a short time to replead them in an amended complaint. But the remaining plaintiffs have properly pleaded claims for breach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment, so the court will not dismiss those claims.

ORDER

IT IS ORDERED that:

1. Defendant Menard, Inc.'s motion to compel arbitration, Dkt. 7, is GRANTED. All claims of plaintiffs Amy Childers, Cody Italia, Nazar Mansoor, Debbie Rider, Ryan Ingalls, and Karen Fleckenstein are dismissed without prejudice.

2. Menards' motion to dismiss the remaining plaintiffs' claims, Dkt. 10, is GRANTED in part. The remaining plaintiffs' claims under Wisconsin, Illinois, Michigan, and North Dakota consumer-fraud law are DISMISSED without prejudice. The remainder of Menards' motion is DENIED.

3. Plaintiffs may have until September 17, 2020 to file an amended complaint repleading their consumer-fraud claims. If they do not do so, the court will dismiss these claims with prejudice. If plaintiffs file an amended complaint, defendant may have until October 1, 2020 to file a renewed motion to dismiss.

Entered September 3, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge