Sabita J. Soneji (*admitted pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
(510) 254-6808
ssoneji@tzlegal.com

David S. Almeida
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 S. Wacker Dr., Suite 1600
Chicago, IL 60606
(312) 212-4979
dalmeida@beneschlaw.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| BARRY EARLS, THOMAS FETSCH, TRENT SHORES, STEVE SCHUSSLER, CASSIE LIETAERT and CHRIS JESSE, *individually and on behalf of a class of similarly situated individuals*, <br><br> Plaintiffs, <br><br> v. <br><br> MENARD, INC., a Wisconsin corporation, <br><br> Defendant. | Case No. 20-CV-107 <br><br> Judge: Hon. James D. Peterson |

## **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO RECONSIDER**

To distract from the substance of Plaintiffs' counsel's arguments supporting reconsideration of this Court's March 31, 2021 Order granting, in part, the motion for sanctions, Menards asserts that Plaintiffs' counsel is blaming the Court. To be clear, undersigned counsel is *not* blaming this Court and does accept responsibility for the events that led to the voluntary

dismissal of the litigation in March 2021. (*Compare* Dkt 117, Opposition at 1 ("And, in seeking 'reconsideration,' counsel now blames the Court."), *with* Dkt 108, Plaintiffs' Memorandum of Law in Support of Motion for Reconsideration, at 2 n.1 (stating that "[t]o the extent that Plaintiffs' counsel did not address any specific concerns the Court had (for instance, whether they reviewed Menards' November 2020 document productions), counsel apologizes to the Court for not addressing previously . . . .").)

When undersigned counsel noted that they sought to push back briefing on Plaintiffs' motion for class certification, (Dkt 108 n.3), they did not—as Menards contends "blame" the Court; rather, they sought to modify the scheduling order to allow counsel additional time to resolve the outstanding discovery disputes. Such conduct is germane to the current sanctions issue as it demonstrates that undersigned counsel sought to avoid unnecessary litigation, not create it and is therefore seeking reconsideration of the Court's finding, (Dkt. 106), that they acted recklessly by continuing to litigate the case after November 25, 2020. *See, e.g.*, *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) ("[a] motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension."). While Plaintiffs' counsel do not contend that they are blameless, they hope to show the Court that they conducted themselves in good faith and did not act recklessly or vexatiously as is required to satisfy the very high standard to impose sanctions under 28 U.S.C. §1927.

Leaving aside the vitriol and *ad hominem* attacks, Menard's Opposition to Plaintiffs' Motion to Reconsider distorts the facts and ignores many of Plaintiffs' counsel's arguments demonstrating that they were not in possession of evidence that would have demonstrated their

clients' claims were factually deficient prior to the three depositions in late February and early March 2021, and therefore did not act recklessly by continuing to investigate, seek and compel discovery, and litigate the proposed class's claims up to that point. Plaintiffs' counsel repeatedly spoke with and interviewed their clients prior to filing the original complaint in February of 2020 and the amended complaint in September of 2020, and spoke with them again before responding to Menards' discovery requests and as new (and often belated) information was produced by Menards.

Through their Motion, Plaintiffs' counsel seek to draw the Court's attention to the facts available to them in November of 2020 which were *not* sufficient to confirm that none of the named Plaintiffs had viable claims. At that time, Plaintiffs' counsel had—due to Menards' requirement that rebate claimants provide all original documentation—minimal documentation (all of which was produced to Menards' counsel) but had interviewed their clients many times and attempted to determine whether Menards had received the rebate applications, denied them, reduced them in some amount for some reason and/or aggregated them with other, separate requests.

For example, while Menards did issue rebate checks to some Plaintiffs, those checks were in aggregated amounts that did not provide information necessary to determine for which purchases the rebates applied. As Plaintiffs' counsel detailed in the Motion to Reconsider, the rebate information Menards produced in November 2020 (the 95 millions lines of spreadsheet data) merely showed the **total** amounts of purchases and the rebate amounts issued; it did not show (i) the transaction history (*i.e.*, what was purchased and in what amount), (ii) whether there was an "error" in processing the receipt that might lead to the receipt being rejected or adjusted or (iii) demonstrate how the purchase amounts were related to the rebate amounts.

In awarding sanctions, the Court noted that it was "unclear why plaintiffs would need to conduct further investigation to identify the documents that they relied on to form the allegations in the complaint." (Order at *7.) And, while Menards' discovery requests to Plaintiffs did require undersigned counsel to re-interview their clients, those conversations confirmed over and over that plaintiffs did not believe that they received certain specified rebates in the correct amounts. For instance (and as set forth in Plaintiffs' Motion), Plaintiff Earls did testify that he knew he did not purchase items on the day an 11% rebate promotion was running, but he also testified—consistent with his many conversations with Plaintiffs' counsel—that he returned to the Menards' location the next day and was told that the purchases would be eligible for an 11% rebate *not* a price adjustment. (Dkt. 98-1 (Earls Dep. Tr. 97:2-98:6).) Mr. Earls also testified that he did not recall returning certain items that would have reduced his rebate amount and that he did not purchase items on sale (which would have precluded eligibility for a price adjustment promotion). (*Id*. at 107:17-25). It is precisely this diligence and investigation conducted by Plaintiffs' counsel that Menards dismisses or ignores in its Opposition.

Moreover, Menards' own Fee Petition demonstrates the complexity of determining whether rebates were awarded in the appropriate amounts. (*See generally* Dkts 113-115.) Indeed, several partners at Menards' counsel's firm spent dozens and dozens of hours conducting "research" and "lengthy analysis" of the representative plaintiffs' purchases, rebates, adjustments, returns and "barcode histories," and all of this time expended was well after Plaintiffs' counsel supposedly should have known that the plaintiffs' claims were factually deficient. (*See* Declaration of David S. Almeida, dated May 13, 2022 ("Almeida Decl."), ¶¶ 6-8 & Ex. C thereto.) For instance, it is entirely unclear why Menards' counsel would need to—on February 12, 2021—conduct 4.2 hours of "[l]engthy analysis of Plaintiff Steve Schussler's purchases, rebates,

4

redemptions of same, and barcode histories" if Plaintiffs' counsel had all the requisite information it needed to assess the viability of his claim in November 2020.[1]

The Motion also seeks to draw the Court's attention to facts establishing that, even after Menards made its final production in February 2021, Plaintiffs' counsel was still *not* in possession of sufficient information to render their continuation of Plaintiffs' claims through the initial plaintiff depositions reckless or vexatious.[2] *See, e.g.*, *Hunt v. Moore Bros.*, 861 F.3d 655, 660 (7th Cir. 2017) (stating that § 1927 permits sanctions against a lawyer who "so multiplies the proceedings in any case unreasonably and vexatiously"). At all times Plaintiffs' counsel had a good faith belief that Menards was not properly issuing rebates to the named plaintiffs and the thousands of other affected consumers who had complained to the Better Business Bureau and others about the exact same issue.

In addition, Plaintiffs' counsel seeks to draw the Court's attention to the considerable efforts that Plaintiffs' counsel made to compel Menards to provide the information necessary to fully evaluate Plaintiffs' claims throughout late 2020 and early 2021. (*Cf.* Order at 8 n.3 (stating that "plaintiffs' counsel does not describe any efforts they took to review the November 2020 production").) However, Plaintiffs' counsel not only reviewed the 95 spreadsheets (containing 95 million lines of data) but they pursued explanation of the data, including some explanation of the data field names, from Menards, met and conferred several times and questioned Menards'

---

[1] There are many, many time entries of this nature professing to review and to analyze Plaintiffs' transaction histories in January, February and March of 2021. (*See id.*)

[2] While Menards makes many representations to the Court about what was in the productions and how that establishes the basis for sanctions, Plaintiffs' counsel cannot test or refute these assertions because Menards demanded that Plaintiffs' counsel destroy this evidence after they dismissed the case—then filed the sanctions motion after Plaintiffs' counsel no longer had access to the documents that Menards claimed showed they had acted recklessly. In their Opposition, Menards does not anywhere address or explain why it did that or how that did not prejudice Plaintiffs' counsel, who were forced to defend their integrity and honesty to the Court with their hands tied behind their back.

5

30(b)(6) witnesses about how to decipher those spreadsheets, including their data fields. (*See* Dkt 108 at 3-5 & 10-16; *see generally* Plaintiffs' Motion to Compel, Dkts 81-82 & Declaration of Sabita Soneji, Dkt 86.) Plaintiffs had filed a motion to compel in order to obtain this information before they dismissed their case but that motion was never ruled upon. (*See* Dkt 108 at 10 n.7 (noting that the motion to compel was withdrawn when Plaintiffs sought leave to voluntarily dismiss their claims) (citing Dkt 90).) Thus, through the instant Motion, Plaintiffs' counsel seeks to ensure that the full record of their efforts to understand the rebates Menards did and did not issue to their customers was available to and considered by the Court. In its Opposition, Menards does not address these efforts by Plaintiffs.

As a final but important point, Menards continues to insist that it was so obvious that Plaintiffs claims were without merit by November 2020 that any further action to continue the litigation by Plaintiffs' counsel was not just negligent but unreasonably reckless. And yet, per Menards' Fee Petition, no less than five partners representing Menards allegedly racked up nearly $1 million in fees from November 25, 2020 onwards, and spent dozens and dozens of hours analyzing transaction and rebate information, including reviewing and producing thousands of documents in February 2021. (*See generally* Menards' Fee Petition, Dkt 113, at 4; *see also* Almeida Decl., ¶¶ 6-8 & Ex. A thereto.) If the frivolity of Plaintiffs' claims were so clear, it is hard to grasp why Menards' counsel would need to expend such time and expense disproving them. And, if all the information Plaintiffs' counsel needed to come to the understanding was produced by Menards in November of 2020, why did Menards' counsel not then send Plaintiffs' counsel a Rule 11 letter demanding the dismissal of Plaintiffs' claims. Menards did not do so because it had not yet provided all of the relevant documents (not until February of 2021) nor did they seek to afford Plaintiffs and their counsel the benefit of the safe harbor under Rule 11.

6

Menards' counsel continued to litigate the case (despite its contention that Plaintiffs' case was doomed from the inception) seemingly in the hopes that they would be able to convince the Court that Plaintiffs' counsel acted unreasonably.[3]

At no point in this litigation has Plaintiffs' counsel turned a blind eye to the evidence or persisted in litigation for the sake of litigation. Rather, undersigned counsel spent months trying to understand Menards' November 2020 production and its belated February 8, 2021 production. And they repeatedly spoke with Plaintiffs as new evidence was produced. The fact that certain named Plaintiffs' claims were not factually viable does not mean that Plaintiffs' counsel acted unreasonably, recklessly or vexatiously. The imposition of sanctions on this factual record is not warranted. *See, e.g.*, *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1185 (7th Cir. 1992) (stating that mere negligence is not enough and the attorney must act with recklessness or indifference); *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003) (stating that courts should impose sanctions under § 1927 sparingly). And, at the very least, the complexity of the documents discussed and the severity of these potential sanctions warrant a hearing.

## ARGUMENT

### I. There are Sufficient Grounds for Plaintiffs' Reconsideration Motion.

Federal Rule of Civil Procedure 54(b) permits the Court to reconsider interlocutory orders "at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Courts grant such motions "to correct manifest errors of law or fact or to present

---

[3] Though counsel maintains that Menards' billing from November 25, 2020 through the dismissal of the case was beyond excessive, regardless of the complexity of the case, the reason Menards expended even a fraction of the effort it claims is because matching purchase information to the information on the rebate spreadsheets and matching that information to the aggregated rebate checks was far from straightforward. Connecting the information was made even more complicated without access to much of the relevant purchase receipts which Menards did not produce until February 2021. Indeed, this opacity supports the need for a hearing on this motion, at which the parties can show the Court precisely what Menards produced and how those documents were used at depositions.

newly discovered evidence." *Woods v. Resnick*, 725 F.Supp.2d 809, 827-28 (W.D. Wis. 2010) (quoting *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987)). Reconsideration allows a party to direct the court's attention to newly discovered material evidence or a manifest error of law or fact, and enables the court to correct its own errors and thus avoid unnecessary appellate procedures. *See, e.g., Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir.1995); *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).

Here, Menards' motion for sanctions was so broad and wide-ranging that Plaintiffs' response in opposition was only able to address Defendant's allegations in a similarly broad fashion. Under these circumstances—where Plaintiffs' counsel were responding to a barrage of accusations without the benefit of documents that Menards demanded they destroy weeks before it filed its sanctions motion—the Court's Order understandably drew conclusions based on an incomplete factual picture.

Most significantly, the Court concluded that Plaintiffs' Counsel acted recklessly when they continued to pursue their case after they received Menards' November 2020 document production and then submitted their updated responses to Interrogatories. (*See* Order at*8.) But in their Motion, Plaintiffs' Counsel draws the Court's attention to their extensive efforts to understand and decipher this production that were detailed in their Motion to Compel, which they filed in early March 2021. (*See* Dkt 108 at 3-5 &10-16.) Because Plaintiffs sought leave to voluntarily dismiss their case a few days later, they necessarily withdrew their motion to compel, (Dkt 90), and thus the Court was likely unaware of the considerable efforts made to obtain decipherable discovery from Menards. Plaintiffs' motion for reconsideration was filed with the intention of clarifying some of the facts so that the court could reconsider its decision while considering the full factual record.

## II. Menards' Opposition Fails to Address Many Arguments and Facts Raised In the Motion

While Menards repeatedly accuses Plaintiffs' counsel of misstating the record and lying to the Court, its Opposition elides many of the substantive points in the Reconsideration Motion and never demonstrates how or where Plaintiffs' counsel misstated the record. Plaintiff's counsel refutes these accusations and does so without the benefit of being able to review the documents Menards insisted be destroyed before filing their sanctions motion. For example, Menards repeatedly insists that Plaintiffs' counsel "knew" that customers did not have to mail-in their original receipts, "knew" it could easily search through the 95 million lines of rebate information, and "knew" that Menards' February 2021 production of documents was "irrelevant." (Opposition at 5-7). But as Plaintiffs' counsel details in the motion to reconsider and in the present motion: Plaintiffs <u>did</u> submit their original receipts pursuant to their interpretation of Menards' rebate instructions and Plaintiffs produced to Menards all of the receipts Plaintiffs did retain; Plaintiffs' counsel has explained in detail the efforts it made to examine the 95 rebate spreadsheets and the efforts it made to obtain information necessary to interpret those spreadsheets; and Plaintiffs strongly dispute the idea that the documents in Menards' February 2021 production were irrelevant, particularly in light of the fact that Menards relied on that very production at the three depositions and in its motion for sanctions.

Regardless, even with the benefit of unilateral access to the record evidence, Menards ignores many of the arguments and corrected facts in Plaintiffs' motion to reconsider. For example, Menards does not explain why its motion for sanctions relied on documents that were not produced until February 8, 2021 if those documents were not necessary to confirm that Plaintiffs' claims were not actionable. The fact of the matter is that Menards and its counsel conducted a large data dump in November 2020 and then did not produce the most pertinent

9

Plaintiff documents until February 8, 2021. The record evidence (together with the actual arguments made in Menards' own motion for sanctions), demonstrates that undersigned counsel were not in possession of relevant and critical rebate details until February 2021.

Menards' Opposition also does not address the many attempts Plaintiffs' counsel made to decipher the rebate spreadsheets, the multiple requests for meet and confers, the 30(b)(6) questioning concerning those spreadsheets or the motion to compel that Plaintiffs filed outlining such efforts. In addition, Menards accuses Plaintiffs' counsel of vexatiously multiplying the proceeding but fails to acknowledge or address that Plaintiffs requested that the class certification briefing be extended and Menards opposed such an extension. (*See* Dkt 108 n.4.) This is an important fact because Menards' refusal to agree to postpone this briefing led to the massive expenditure of time and resources on a class certification motion that Plaintiffs' counsel did not wish to file until they had compelled and analyzed all needed discovery to ensure that they understood Menards' opaque rebate process. That is why they filed a motion to compel and worked so hard to meet and confer. Nowhere does Menards explain why they refused to allow for a pause in the class certification briefing so that Plaintiffs' counsel could obtain the information that it finally shared in February of 2020 and then ultimately used as the basis for its sanctions motion.[4]

Menards' Opposition also attempts to litigate the merits of each named plaintiffs' claims, (Opp. at 5-13), summarily claiming, without support, that Plaintiffs kept their receipts, that Plaintiffs' receipts contain all necessary information to evaluate these claims, and that the 95 million lines of data produced in November 2020 revealed all details about these Plaintiffs' transactions and rebates in an understandable format. Critically, Menards never addresses the

---

[4] Notably, it is Menards' counsel that has opposed Plaintiffs' counsel attempts to conserve resources and to avoid litigation where possible. Menards even opposed undersigned counsel's request to pause briefing on its fee petition while this motion to reconsider was under consideration.

central issue for this motion: whether it was reckless to continue those plaintiffs' claims while Plaintiffs and their counsel had and voiced so many outstanding questions about their rebates.

**III.     Continuing the Litigation Beyond November 2020 was *not* Reckless or Unreasonable**

When Plaintiffs originally brought their claims, there were thirteen plaintiffs, seven of whom were unable to continue after their claims were compelled to arbitration. Of the six remaining Plaintiffs, only one was needed to continue the class claims and Plaintiffs' counsel had an obligation to advocate for its clients and the putative class. In the motion to reconsider, Plaintiffs' counsel is not arguing that named Plaintiffs' claims were ultimately factually viable or that Menards was not able to eventually demonstrate this. Rather, their contention is that as soon as Plaintiffs' counsel was reasonably able to determine that these Plaintiffs' claims could not go forward, they dismissed. Further, the Motion to Reconsider asserts that, based on the record evidence, as of November 2020 counsel could not be certain that Plaintiffs received their rebates in the appropriate amounts, particularly given the lack of transparency that surrounds Menards' mail-in rebate program.

Menards claims in a conclusory fashion that the fact that there was limited documentation about their rebates available to Plaintiffs was irrelevant but fails to rebut or even address any of the assertions made in Plaintiffs' Motion to Reconsider regarding its late production and Plaintiffs' efforts to obtain explanations for the documents already produced. For example, Menards insists that the rebate spreadsheets were not only easy to search and understand but were irrelevant to some Plaintiffs claims and, for Plaintiffs Jesse and Schussler, were alone sufficient to require dismissal because they "clearly showed rebates issued [] for purchases made on the relevant dates." (Opposition at 7). But, as detailed in the Motion to Reconsider, the voluminous rebate spreadsheet production was not enough to dismiss Plaintiffs' claim on its own, even if, as Menards incorrectly contends, the information was able to be interpreted with certainty. (*See* Dkt 108 at 10-13.)

Without purchase information and detailed information on the aggregated rebate checks demonstrating the specific purchases for which rebates were issued, for example, continuing the case through depositions—when Menards' counsel questioned Plaintiffs with a composite exhibit clearly designed to distill the disparate transaction and rebate information into a single cohesive document—was reasonable and appropriate.

Focused instead on attacking the named Plaintiffs and arguing the merits of their claims, Menards' arguments concerning the specific Plaintiffs fail to address the actual basis of Plaintiffs' motion to reconsider: whether it was reckless for Plaintiffs and their counsel to continue their claims based on information they had in November 2020. Simply put, it was not.

### A. Barry Earls

Menards asserts that Mr. Earls "unmistakably testified that he knew that the 11% Off Everything sale was not running when he made his purchase" and, to support its contention, cites the deposition testimony wherein counsel for Menards, in leading fashion, states that Earls was given an 11% Price Adjustment form (not an 11% Off Everything form), to which Earls answers: "I guess so." (Opposition at 8.) Menards, however, ignores the fact that Mr. Earls, in that very same exchange, testified that he went to the Menards' location the following day (June 18, 2017) and was informed by a Menards' employee "that, not to worry, that [he] was still eligible for the 11 percent offer, [he] just had to fill out an extra piece of paper." (*Id.* at 97:2-98:6.) It was reasonable to persist in Mr. Earls' claim based on this testimony (and as Menards notes, Plaintiffs only needed one representative plaintiffs' claim to be viable).

Menards also insists that Mr. Earls' own documents (including customer service emails) prove there was no basis for counsel to go forward with his deposition. (Opposition at 7.) But in those emails Menards informed Mr. Earls that it did not issue the full 11% rebate because he

purchased an item on sale. Moreover, Mr. Earl's receipts showed no items purchased were on sale and even the Menards' store manager with whom Mr. Earls spoke after his rebate was denied was confused, telling him he did "everything right" and should have received his full rebate. (*See* Dkt. No. 28, ¶ 123; *see also* Soneji Decl., Dkt. 102, ¶ 16.) This evidence alone provided a good faith basis to continue Earl's claims and demonstrates reasonable conduct on the part of Plaintiffs' counsel.

Finally, Menards points to the assertions in the complaint and declares that counsel had no business continuing the litigation because these allegations were untrue. (*See* Opposition at 8-9.) But Menards' own view of the pleadings are not at issue here as, among other things, this Court has already determined that undersigned counsel's pre-suit investigation was not objectively unreasonable. (*See* Order at *5.) The entire purpose of discovery is to determine if there is factual support for plaintiffs' claims and if Menards had actually been forthcoming with relevant evidence at the appropriate time, undersigned counsel would have been in position to evaluate and to potentially dismiss the case much earlier. *See, e.g.*, *ARcare v. American Lifeline, Inc.*, No. 3:17-cv-003134-wmc (W.D. Wisc. Nov. 22, 2017) (noting that while plaintiff was certainly not blameless in the situation, "defendant's failure to make further efforts to streamline the litigation and save time and effort on the part of both the litigants and the court, does not justify taxing fees and costs or other sanctions on balance"). Given the uncertainty as to whether Mr. Earls received his fully-owed rebate and the purchase of sale items that would negate his rebate, the record evidence does not demonstrate any unreasonable or reckless conduct on the part of his counsel.

### B. Trent Shores

Menards does not deny that the transaction details regarding Mr. Shores' relevant purchases were not produced until February 8, 2021. (*See* Opposition at 9.) Instead, Defendant argues that "a simple review of his receipt would have sufficed" to inform Plaintiff counsel that presenting Mr. Shores for deposition was reckless and done in bad faith. (*Id.*). But Menards does not explain how the receipt would have indicated, without the transaction detail produced in February 2021, that Mr. Shores' purchase was ineligible for the rebate program. Given that, it was reasonable for Plaintiff Shores to continue to believe that he was entitled to a rebate for his purchase. The only support Menards offers to bolster its claim that Plaintiffs' counsel should have known Mr. Shores was not entitled to a rebate is its conclusory answer to the Amended Complaint denying Shores' allegations. (*Id.*) Menards' denial in its Answer does not provide any basis to find that pursuing Mr. Shores' claim until his purchase transaction details had been produced and he sat for deposition was reckless.[5]

### C. Tom Fetsch

Once again, Menards does not deny that it did not produce the relevant rebate history information until February 2021. (Opposition at 11). While Mr. Fetsch's emails to Menards, which Plaintiff's counsel produced, indicate that Mr. Fetsch received some rebates, absent the rebate history to compare with the rebate spreadsheets—both of which Menards used at Mr. Fetsch's

---

[5] Menards makes much of counsel's assertion that learning about a possible claim regarding eligibility for a price adjustment promotion that he did not receive was contrary to the allegations in the amended complaint. (*See* Opposition at 9-10.) But continuing discovery so as to determine whether Mr. Shores had a claim as to the price adjustment is not unreasonable and is one of the reasons why parties engage in discovery. Given the uncertainty as to Mr. Shores' rebate allegations and the late produced transaction detail documents, allowing discovery to proceed through Mr. Shores' deposition was not reckless and was not done in bad faith.

14

deposition—it was not reckless for counsel to continue his claims and present Mr. Fetsch for deposition in March 2021.

### D. Steve Schussler & Chris Jesse

Menards argues that it should have been (a negligence standard) obvious to Plaintiffs' counsel that the Mr. Schussler and Mr. Jesse received the rebates that they alleged they had not received in the Amended Complaint despite acknowledging that neither Ms. Schussler nor Mr. Jesse was actually issued the rebate for the amount they anticipated. (Opposition at 12.) This is entirely the point of Plaintiffs' case and their motion to reconsider; there was no visibility or transparency into Menards' rebate program and Plaintiffs (and hundreds of other complainants to the BBB and elsewhere) could not determine whether or not they had been issued rebates in the appropriate (and often aggregated) amounts. Though Plaintiffs' counsel ultimately determined that the allegations of these named plaintiffs were not actionable and promptly dismissed their claims after coming to that determination, which was certainly not so "self-evident" in November 2020 such that presenting these Plaintiffs for deposition was unreasonable and done in bad faith.

For example, as the Motion explains, while Mr. Jesse was expecting a rebate check in the amount of $310 for his $2,824 purchase, he instead received a combination of various rebates which he had submitted, all issued on one rebate check (no. 8497) in the amount of $448.31. (*See* Jesse Dep. Tr. at 210:23-211:17; *see also* Dkt 108 at 21-22.) The rebate check was not accompanied by any information or itemization that would have informed Mr. Jesse of the fact that the $310 rebate for the $2,824 purchase was included therein, nor did $448 seem to be large enough to include all those combined rebates. (*Id*.) It was, simply put, not clear that Mr. Jesse received his $310 refund. Moreover, the details of the $448.31 rebate check that was issued to Plaintiff Jesse, including information regarding to which purchases that rebate related, was not

produced until February 8, 2021 and thus could not have been "obvious" to Plaintiffs' counsel. (*See id*. at 210:13-214:13.)

With respect to Plaintiff Schussler, the full transaction history for the relevant transactions (including his original transaction history, his scanned rebate submission, the "barcode history" and a number of returns he made after his transaction but before his rebate paperwork) were also not produced until February 8, 2021. (*See* Dkt 108 at 22.) While Plaintiff Schussler may have been aware that multiple rebates could appear on the same rebate check, he consistently maintained to his counsel that he had not received certain, specified rebates.

Menards protests that its rebate program is not opaque and bristles at Plaintiffs' suggestion otherwise. However, the thirteen plaintiffs who filed claims in the original complaint, the six plaintiffs who continued to assert their claims and produced documents, the three plaintiffs who sat for deposition, and the literally thousands of Menards customers that filed complaints with the Better Business Bureau and elsewhere on consumer complaint websites all disagree. Menards operates a rebate program that gives consumers very little visibility into when and whether Menards awards full or partial rebates (or no rebate at all). Once a Menards shopper submits her original receipt and rebate form, she may wait months to receive an in-store rebate check, and even if she gets one, it will not identify the transactions at issue or whether and why Menards issued the rebate in the amount it did. For Mr. Jesse and Mr. Schussler, the rebate checks they received were not in amounts that matched up with their understanding of what they were owed. In addition, the relevant detailed evidence concerning the rebates awarded and redeemed by Plaintiffs and the transactions underlying those rebates, was exclusively in the control of Menards and, in the case of Mr. Jesse and Mr. Schussler, Menards did *not* produce the entirety of that detailed evidence until February 8, 2021. In November 2020, the uncertainty surrounding the rebates of Mr. Jesse

and Mr. Schussler was such that, waiting for the production of documents detailing the rebates and relevant transactions—documents that were produced in February 2021 and which Menards used both at the depositions and in its motion for sanctions—was not reckless.

Finally, Plaintiffs' counsel wants to make it clear that they acknowledge that they are not without fault in this case. Plaintiffs' counsel has not—as Menards maintains—pointed the finger at everyone else involved. Rather, Plaintiffs' counsel acknowledges and takes responsibility for its role in this case. That said, Plaintiffs' counsel did not act recklessly or vexatiously at any point in this case. Plaintiffs' counsel expended considerable time and effort and expense trying to determine if Plaintiffs received their anticipated rebates in the correct amounts. Menards possessed such information and made the conscious decision to produce only part of the requested information in November 2020 with the remainder produced in February 2021, just before Plaintiffs' depositions. And, as set forth in Plaintiffs' withdrawn Motion to Compel, Plaintiffs' counsel did not sit on their hands or do anything other than diligently pursue their clients' claims and push to get Menards to comply with its discovery obligations. Even if it should have been clear to Plaintiffs' counsel in November 2020 that some named Plaintiffs' claims were not viable, it could not have been clear that all named Plaintiffs' claims were not viable, and counsel's decision to continue the case until they received the detailed evidence of transactions and rebates they repeatedly requested was reasonable or, at worst, negligent. *See, e.g., Stockbridge-Munsee Cmty. v. Wisconsin,* No. 17-CV-249-JDP, 2018 WL 708389, at *4–5 (W.D. Wis. Feb. 2, 2018), aff'd, 922 F.3d 818 (7th Cir. 2019) (denying sanctions because "'[s]imple negligence' by the attorney does not warrant a sanction under § 1927"). The record evidence demonstrates that the imposition of sanctions on Plaintiffs' counsel is not warranted and does not meet the heightened standard under § 1927.

Under these circumstances, Plaintiffs' counsel respectfully contends that sanctions that could forever mar the careers of distinguished lawyers who have served their clients with distinction for years without a single accusation of wrongdoing is not supported under the facts and the relevant law. Attorney Almeida has been a practicing lawyer since 1999, is licensed in New York, Illinois and Wisconsin, and admitted in numerous federal district and appellate courts. (Almeida Decl., ¶ 4.) Mr. Almeida, who is a Partner at Benesch Friedlander Coplan & Aronoff LLP and is co-chair of the Firm's class action practice group, has over the course of his career primarily defended retail, hospitality, healthcare and consumer packaged goods in consumer class action litigation. (*Id.*, ¶ 5.) Attorney Soneji has been a practicing lawyer since 2002, and has spent much of her career as an attorney with the Department of Justice, fighting against consumer financial fraud. (See Ex. B to Almeida Decl., Soneji Firm resume). Ms. Soneji is now a Partner with Tycko & Zavareei, LLP, chair of the firm's privacy and data breach group and has served as a co-lead on dozens of consumer class actions, including Multi-District Litigation. (*See id.*)[6]

## CONCLUSION

For the foregoing reasons, Plaintiffs Barry Earls, Thomas Fetsch, Trent Shores, Steve Schussler, Cassie Lietaert and Chris Jessie respectfully request this Honorable Court to (i) reconsider its Opinion and Order dated March 31, 2022, Dkt. 106; (ii) vacate its award of sanctions from November 25, 2020 through March 2021; (iii) schedule a hearing whereby the parties may present evidence on any specific issue of concern to the Court, including, but not limited to, the

---

[6] At the very least, this detailed debate about what documents revealed what information about Plaintiffs' claims further underscores the need for a hearing at which the Court can review these documents and walk through the details in a way that Plaintiffs did not adequately address in opposition to Menards' broad sanctions motion and in a way that Menards fails to do so in its opposition to this Motion to Reconsider.

issue of thoroughness of the investigation conducted by Plaintiffs' counsel throughout the pendency of the litigation and (iv) award all such other relief as is equitable and just.

Dated: May 13, 2022

Respectfully submitted,

*/s/ Sabita J. Soneji*
Sabita J. Soneji (*admitted pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
(510) 254-6808
ssoneji@tzlegal.com

*/s/ David S. Almeida*
David S. Almeida
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
71 S. Wacker Dr., Suite 1600
Chicago, Illinois 60606
(312) 212-4979
dalmeida@beneschlaw.com

*Attorneys for Plaintiffs*